Reginald Burgess
c/o Wilbur Union
1851 Concord Pike #303
Wilmington DE 19808

800-776-8769
unioncos@mail.com

# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| REGINALD BURGESS,<br><br>                    Plaintiff,<br>        and as Warranty Deed Guarantor<br>ROY UNION, a Delaware Corporation,<br>        Real Party in Interest,<br>WILBUR UNION, a Delaware<br>Corporation,<br>        Real Party in Interest,<br><br><br>            v.<br><br>TITLE365 COMPANY,<br>ERIC D. SWENSON, individually and in<br>his official capacity as President and CEO<br>of TITLE365  COMPANY,<br>and;<br>DOES, 1 TO 10<br>                    Defendants. | Case No.<br><br>**PETITION AND / OR COMPLAINT<br>FOR RESTITUTION**<br>[18 USC 3663A(c)(1)(A)(ii)]<br>[ 18 USC 3771(d)(3) ]<br>[ 28 USC 1343 ]<br>[42 USC 12182]<br><br><br>**PROPOSED ORDER – EXHIBIT Z**<br><br><br><br>**Honorable   Leonard P. Stark, CJ**<br>Date         Time           Rm |

Plaintiff, REGINALD BURGESS alleges:

## I.  VENUE AND JURISDICTION

1.1    Venue is proper by 28 USC 1391(b)(3) as Defendant Title365 Company, is
       an active corporation licensed to do business in the State of Delaware.

1.2     Plaintiff Reginald Burgess is the 11 USC 524 protected GRANTOR of a WARRANTY DEED to a now suspended  Delaware Corporate entity "Roy Union" – due defendants' and their theft by agency - now whose assets are held by "Wilbur Union" an active Delaware Corporation, of which he is the CEO, with an address of 1851 Concord Pike #303, Wilmington DE 19808

1.3     18 USC 3663A(c)(1)(A)(ii) which reads in relevant part:

(c)

(1) This section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense—

(A) that is—

. . .

(ii) *an offense against property under this title, . . .  including any offense committed by fraud or deceit*;

1.4     18 USC 3771(d)(3) reads in part "The rights described in subsection (a) shall be asserted in the district court in which a defendant is being prosecuted for the crime *or, if no prosecution is underway, in the district court in the district in which the crime occurred*. The district court shall take up and decide any motion asserting a victim's right forthwith. . . ." [emp added] {defendant has taken and is withholding Delaware Corporate citizen assets of which the California Courts have ruled said Corps have no standing there}

1.5     18 U.S.C. § 152(8) -- Destruction or Alteration of Recorded Information – see also §863 U.S. Attorneys » Resources » U.S. Attorneys' Manual » Criminal Resource Manual » CRM 500-999 » Criminal Resource Manual

801-899[1]

1.6     18 U.S.C. § 157(3) -- Bankruptcy Fraud— See also §879 U.S. Attorneys » Resources » U.S. Attorneys' Manual » Criminal Resource Manual » CRM 500-999 » Criminal Resource Manual 801-899[2]

1.7     Jurisdiction of this court is invoked pursuant to 28 USC 1334(b)

1.8     Jurisdiction of this court is invoked pursuant to 28 USC 157(b)(5)[3]

1.9     Jurisdiction of this court is invoked pursuant to 28 USC 1367(a)

1.10    Jurisdiction of this court is invoked pursuant to 28 USC 1343

1.11    Jurisdiction of this court is invoked pursuant to 28 USC 1331

1.12    Jurisdiction of this court is invoked pursuant to 28 USC 1332

1.13    Jurisdiction of this court is invoked pursuant to the **_Erie Doctrine_**[4] as

---

[1] See https://www.justice.gov/usam/criminal-resource-manual-863-destruction-or-alteration-recorded-information-18-usc-1528

[2] See https://www.justice.gov/usam/criminal-resource-manual-879-bankruptcy-fraud-18-usc-157

[3] This action represents and pleads also personal injury torts of intentional infliction of emotional distress, intentional interference with prospective economic advantage and intentional interference with contract as a component of bad faith.

Petition and / or Complaint for Restitution

1

2

defendant meets 5 of the 6 prongs of 28 USC 1391  for "found" in the State.

3

1.14    Jurisdiction of this court is invoked for collateral attack pursuant to 11 USC
524 for use of a "constitutionally invalid" – a.k.a. "void on its face"  and
voided orders by 11 USC 524, [*IN RE PAVELICH*,  BAP No. CC-98-1386-
KJB, Bankruptcy No. 92-11499-MJ,   229 B.R. 777 (1999)] and failure to
jurisdiction in violation of due process rights by  California Probate Code (PC
or Probate)  21351 – an order void by operation of law as to 11 USC 524
cannot be fanned back to life in any part what so ever by any court; and to
have jurisdiction to make an "undue influence' ruling Probate 21350 must be
invoked as jurisdiction in any petition before it and the exceptions of Probate
21351 must not apply.  While a party injured by a violation of the discharge
injunction has no private cause of action for damages under § 524 or § 105.

14

15

16

---

[4] 28 USC 1391 uses the word "found" which is thus defined by the United States
Supreme Court in deciding a number of cases that have established and refined the
principle that it is unfair for a court to assert jurisdiction over a party unless that
party's contacts with the state in which that court sits are such that the party "could
reasonably expect to be haled into court" in that state.  This jurisdiction must "not
offend traditional notions of fair play and substantial justice".  . See *International
Shoe Co. v. Washington*, 326 U.S. 310 (1945). A non-resident defendant may have
minimum contacts with the forum state if they 1) have direct contact with the state;
2) have a contract with a resident of the state;  See *McGee v. International Life
Insurance Co.*, 355 U.S. 220(1957); 3) have placed their product into the stream of
commerce such that it reaches the forum state; [which they have done by licensing
Title 365 Company to do business in the state]; 4) seek to serve residents of the
forum state; See  *World-Wide Volkswagen Corpv.Woodson*, 222 U.S. 286(1980).
5) have satisfied the Calder effects test; *Calder v. Jones*, 465 U.S. 783 (1984). or 6)
have a non-passive website viewed within the forum state.

Petition and / or Complaint for Restitution

Walls v. Wells Fargo Bank, 276 F.3d 502, 504 (9th Cir.2002). Rather, a violation under § 524(a) is enforced through the bankruptcy court's contempt authority under § 105(a). Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir.2002); Walls, 276 F.3d at 507; and in cases of personal injury tort violations only the District court has jurisdiction per 28 USC 157(b)(5).

## II. PARTIES[5]

2.1   Title365  Company is a California Corporation as title insurer by Title Order 310-18188-35 & Escrow Number 02-021439-LD Secretary of State listed as

| Entity Name: | TITLE365 COMPANY |
| --- | --- |
| Entity Number: | C1942389 |
| Date Filed: | 06/23/1995 |
| Status: | ACTIVE |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 5000 BIRCH ST, STE 300 |
| Entity City, State, Zip: | NEWPORT BEACH CA 92660 |
| Agent for Service of Process: | CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERVICE |
| Agent Address: | 2710 GATEWAY OAKS DR STE 150N |
| Agent City, State, Zip: | SACRAMENTO CA 95833 |

---

[5] A Petition / Complaint for Restitution does not have "Parties" in the traditional sense, it has "Victims" and defendants as tort-feasors or criminal suspects to be adjudicated under in this case 18 USC 152.  See Twenty-Nine Palms Band v. Kovall, 15-50419, (9th Cir 2017) holding  "that neither the MVRA nor the Due Process Clause confers a right on a victim to challenge restitution awards except as provided in 18 U.S.C. § 3771(d)(3)."  Here properly an OSC should issue instead.

Petition and / or Complaint for Restitution

and Title365 Company  is found in the jurisdiction of the State of Delaware with license number 1131002 valid to 02/27/2019.[6]

2.2   Plaintiff Reginald Burgess was a true owner of the 1715 S. Victoria Ave, Los Angeles, CA 90019,  property, and a true owner in fee simple to the subject property with Karen D. Sparks ceding a 50% share of the property to plaintiff via LA Recorder Image document 02-0586383 who then on September 27, 2004 as shown in **Exhibit T** granted a share of the property to Roy Union a Delaware corporation via Warranty Deed.  See **Attachment A, Exhibit I and Q**  Plaintiffs interest was and as shown by **Exhibit Q** and is defined and protected by an 11 USC 524 discharge via 11 USC 522(f) GRANT of **Exhibit Q** and there is NO 11 USC 523(a)(4) exception order for the August 8, 2002 Probate Court order which was void ab initio by 28 USC 1446(d) signed while under a Removal and continued to be used after being positively voided.   See also Filing of fraudulent County Recorder images – see **Attachment A, Exhibits R and S**

## STATEMENT OF THE CASE

18 USC 152 does not limit a timeline to commission of the crime.   While the original crime was committed by Attorneys who created a fraudulent real estate title using a void order, the Title365 Company stepped into the stead of the criminal

---

[6] Found through the National Association of Insurance Commissioners website at https://sbs.naic.org/solar-external-lookup/lookup?jurisdiction=DE&searchType=Licensee&entityType=BE&businessName=title%20365%20company OR tinyurl => https://tinyurl.com/y6vvxudo

activity by defending and assuming the same position of concealment when a claim was made fully apprising them of the scenario.    This is thus a Petition as a Complaint under 18 USC 3771(d)(3) which directs ". . .  The district court shall take up and decide any motion asserting a victim's right forthwith . . . " indicating it appears the district court has a duty to institute an adjudication and investigation into if a Title 18 crime has been committed if no action is already pending – or having been adjudicated alleging and showing a violation of 18 USC 152(8) in minimum, which is committed against Delaware citizens and entities knowingly and fraudulently after claim was sent to the defendants as to the law on the issue.  When the plaintiff filed a complaint with the California Insurance Commissioner, the Office of Dave Jones, (the Commissioner) an investigation ensued upon the issue the insurer had failed to answer the third party claim filed and when Title365 Company did reply, they cited a void and vacated order of August 8, 2002 as authority to seize and re-title the property.  When this fact was pressed to the Office of Dave Jones directly, the position by a staffer who is not an attorney was the matter had to go back to court, yet California Law and the California Supreme Court recently in Association of California  Insurance Companies v Dave Jones, S226529, 1/23/17[7] stated, the proper thing to do for the Commissioner was issue an OSC against the Insurance company even though he had no power to order payment on the claim.  The Commissioner instead fell silent.   As the property is in California

---

[7] The California Supreme Court wrote "A separate statutory provision applies where the Commissioner believes a method of competition, act, or business practice ‖not defined in Section 790.03‖ nonetheless ‖should be declared to be unfair or deceptive.‖ (§ 790.06.) The Commissioner may issue an order to show cause and initiate an administrative proceeding to determine whether the challenged conduct is unfair or deceptive — and, if determined to be unfair or deceptive, serve a written report so declaring on the insurer. (Id., subd. (a).) When proceeding under this provision, the Commissioner lacks the administrative authority to assess monetary penalties against the insurer or enjoin the conduct, but must instead apply (through the Attorney General) to the superior court for an injunction. (Id., subds. (b), (d).)"

Petition and / or Complaint for Restitution

and the Insurance Contract is then found under California law, in this case treble damages apply as California law at California Penal Code 496 allows for the filing of a civil action absent any conviction of any crime but directs treble damages shall apply along with attorneys fees and the costs of suit.  As plaintiff as a Warranty Deed Guarantor is an amputee disabled individual, the court may in its discretion by 42 USC 12188  order the appointment of counsel for plaintiff if it so desires as this is as much a violation of 42 USC 12182 as it is 18 USC 152(8).

## SHORT LITIGATION HISTORY OVERVIEW
### (To illustrate the honest but unfortunate Debtor)

In early 1994, June L. Williams, the Aunt of plaintiff's then wife Karen D Sparks, suffered the passing of her only son Daryl.  She and her life long live in companion George  W. Williams then changed their Estate Planning by revising their identical Wills by replacing Daryl's name with Karen's to be the executor of the Estate and the beneficiary of and the recipient of the home.  As joint tenants, both believed that this would pass their share of the home to Karen if either died and she could then handle affairs and become a live in care party for the surviving person.  Karen was also added as a signatory and owner on the bank accounts so the funds would similarly transfer to two way ownership also; and she promised and agreed not to touch or investigate the funds unless a death occurred between them .  Plaintiff met Karen in Seattle, WA in mid 1994, and knew none of this above had occurred, and because Plaintiff had taken a position in New York with NYNEX as a Network Engineer and plaintiff and Karen were getting along at that time perfectly, they wed and moved to New York together.  Plaintiff did not like the New York city area and resigned the position to return to Seattle within one month.  Plaintiff and Karen then relocated to the San Francisco Bay area, and over the next five years had a child and Plaintiff interacted with Karen's family.  June at that time still by all appearances

healthy, took a liking to plaintiff and when told of Roy Union and its business Plan and manufacturing plans for greenhouse gas Hydrogen generation solution fueling devices and systems for all kinds of hydro-carbon fueling replacement needs, June was excited and  indicated an investment interest and she shared with plaintiff that when one of them passed the home would be Karen's to help fund the business also, and plaintiff jokingly asked "are you both planning to die at the same time".  June was not mad, but looked puzzled.  June told plaintiff she wanted to be free to travel with George and this way there would be someone at the home to protect from break-ins and vandalism.  Plaintiff was silent to the proffer but not really interested[8]. June revealed that this was because the Wills said the same thing.  June said this was a way they could invest in the business and support it and her grand niece; our daughter.  Plaintiff fell silent – on the issue and uncomfortable with what he had been told - changed the subject.  Later he discussed what he was told with Karen who innocuously said yes "that's right I know".  June stated they were not really married anyway.  Plaintiff told Karen at that time – that won't happen if they are married OR both listed on the title.  Karen then made phone calls and told June – who called the attorney who drafted all the Wills  and he confirmed same and allegedly wanted $1,500 each to turn them into Trusts which would work that way.

---

[8] The home located in a semi gated community called Lafayette Square of mostly large Victorian behemoth homes, but was the only 1950's vintage modern built home on a plot of land created from 35 feet of the Northerly lot and 15 feet of the Southerly lot and then sandwiched in so tight the driveway bound with a block wall on one side and the house on the other was so narrow a van barely could go up it with mirrors out, and the garage was built up against two walls to the south and rear. One entrance in and out – was not gated – but outside the community was blight all around of prostitution and drug users and other rif-raf.  Karen was however excited and wanted the home.  Plaintiff saw a headache that did not fit the business plan.

Petition and / or Complaint for Restitution

June angered, believing Karen was a licensed attorney[9] wanted Karen to create identical Trusts with June as initial Trustee of both.  Plaintiff – as a Network Engineer knowledgeable of current software and holding also a degree in Law Studies,  told Karen there was software from Broderbund called the Family Lawyer, that could print out a California Trust for each and they could specify the desired disposition of the home share in the Death of Grantor section as a numbered distribution and then  attach their Wills to the Death of the Grantor section and it would  change nothing of the Estate planning.  So it was done and that is what produced the Trusts found at **Exhibit D.**

As it turned out June knew in early 2001 she now had terminal stage four lung Cancer and told no one – but hid all this tidying up of the Estate planning in innocuous discovery that what they thought they had done was now discovered as wrong.  June as the Executor of the Estate of Clara Powell did not want Karen to go through that which she had.  On September 9, 2001 after signing the trusts and funding them with transferring the 1715 property into the Trusts, ( See **Exhibit K** ) plaintiff and Karen received a call in Northern California that June was now non-ambulatory and "friends" had taken up a  vigil in the home to care for her and one – actually her ex-banker - had written a check to herself for $5,000, discovered how much money was in her bank accounts, then tried to kill June with a morphine overdose knowing there was a DNR directive on file.  Paramedics arrived and did

---

[9] Karen holds a Juris Doctorate from the University of West Los Angeles School of Law, (UWLA) but had been unable to pass the Bar exam after several tries and had not made it clear to family she was failing at this – instead she fled the state of California to Washington state after being sued for an automobile breach of contract sale she reneged on and suffered the legal community wide known embarrassment of as she lost in small claims court.

not honor the DNR, revived June and Karen's mother called asking us to come down to Los Angeles immediately.  Already packed and ready to move to the Minneapolis / St Paul MN region as plaintiff needed a bone resection to save his left leg, plans were changed and plaintiff and Karen headed to Los Angeles September 11, 2001.  Everything  going on was a shock to Karen and plaintiff , especially how much of a demise had befell upon June, and it was then discovered June was in stage four of lung cancer.  Karen discovered this when Karen called the family physician to ask how ill was June because she nor George was able to handle any home or financial affairs and that there were trusts she could activate if he agreed she was that incapacitated. to activate the trusts.  Then it was then at that time Dr. Roberts revealed that June was in stage four of lung cancer and she would not recover and would pass away within a few months.  Karen was "floored" and fell apart mentally.  Plaintiff just can't make this stuff up - as it is what happened.

Upon  Dr. Roberts speaking with June briefly who agreed this is what she wanted done for Karen to take over, he authored and signed the incapacity letter to formally activate Karen's Trusteeship.   It is found at the end of **Exhibit D** also.

On September 23, 2001 June awoke and was convinced it was the day she was going pass away.  June began barking orders to call her sister – Ernestine, Karen's mother to "get over here" right away because she had things she needed to do and say before she passed.  Plaintiff advised Karen NOT to do that – as her Mother would be in the middle of the morning routine for Karen's father who was blind and had Alzheimer's requiring  morning care and feeding.  June was told the call would be made later when the morning routine was done, and June instead persisting in her barking and ordering; and Karen, frustrated grabbed a portable home line phone and called, and as soon as Karen's mother answered, June and George both  began barking she was dying right then loud enough to be heard in a distressful manner

over the phone.   Karen's mother began crying, knowing she could not drive over there right then, and Karen's father heard the tearful distress of his wife - and, legally actually blind - tried to rush to her aid, bumped a narrow powder room door, fell broke his hip, and long story short he passed away the next day from a blood clot and stroke it is believed, and was buried two days later September 26, 2001.

At that point, Karen declared to plaintiff she wanted nothing further to do with any of this, did not want to see June or George's face anymore and was going back to work in Redwood City to the law firm she worked at and for plaintiff  to stay and handle the "mess".  Before she was able to leave, June passed away on October 2, 2001 and after the funeral was done, she made her resignation of her trusteeship formal legally, by transferring the property to plaintiff as shown at **Exhibit  L**. Karen began  traveling back and forth between Redwood City and Los Angeles  (a 400 mile trip) on the weekends only, and when  June passed away on October 2, she formally transferred the property to plaintiff to make distributions as the successor trustee to her.  She did not tell anyone or her family she had resigned as trustee.

Plaintiff made the distribution as required of a 50%. share of the 1715 property to Karen as shown in **Exhibit M**.  Karen then  ceded 50% of her share in Joint Tenancy  to plaintiff as her husband as community property in **Exhibit I**.   Then John D. Williams (JD) showed up making problems, and when it was clear he could not bring a Conservatorship of the Person  over George unless he was living with him, JD  took George actually one morning while still in his bathrobe.  Over some weeks letters were sent explaining that George needed to reside in his Qualified Personal Residence Trust granted him by his own Estate planning or after 30 days it would by law be considered abandoned by law.  These were all ignored and JD had formally filed his Petition for Conservatorship of the Person over George, but the Probate court Chief Judge was having a hard time with Trusts seeing a need for the

Conservatorship in BP070275.  The property was reclaimed by the Trust as formally abandoned as shown in **Exhibit N**.  While at no time was George deprived of his right to care via his share of assets, the Conservatorship by JD and his attorneys had filed a California Probate 2520 petition which Judge Stoever also would not grant, and sent the matter to mediation, but the Trust refused to pay $5,000 for mediation and so too did JD.  In the meantime on December 31, 2001 Probate 2520 suffered its repeal date leaving it no longer viable under the jurisdiction of any court.

## IN THE END

The conservatorship forged ahead with setting a "trial date" which came to be June 3rd to the 6th of 2002, after Probate 2520 was no longer viable, and when the proposed order was received plaintiff knew there were serious due process issues afoot, so plaintiff filled a Petition for Removal on Federal question matters which would have also surrounded the QPRT and Federal Housing issues.  The court signed[10] the proposed order three days after the Removal was perfected, and George's funds were now exhausted in legal fees he caused by his challenge through his brother JD.  Even though 28 USC 1446(d) voided the order, the attorneys were head strong into fraud before the courts and so Bankruptcy was filed to change the playing field.  JD did not procure an 11 USC 523(a((4) exception.

On December 8, 2001, as a direct result of this litigious challenge to the estate planning plaintiff was unable to get the Mayo Clinic in Rochester MN for any ability

---

[10] It is upon reason and belief the Order was actually rubber stamped by the judge's clerk as Judge Hubbell was absent & technically retired winding down his calendar and any Judge worth any weight as a Judge almost NEVER makes an order with the name of the proffering attorney remaining on the order construing it to the attorney.

Petition and / or Complaint for Restitution

to have the fibula in his left leg repaired by a  resection operation  (a cadaver bone piece inserted to repair it) and as subsequent additional trauma to the tumor on his leg caused it to turn into a malignant squamous cell  osteofibrous dysplasia carcinoma that had progressed to  an adamantinoma carcinoma, devouring his fibula from just above the ankle to mid-calf  and his leg had to thus be amputated above the knee.[11]   Upon return to the litigation, George had revealed to his attorneys the amputation was due to bone Cancer, and they decided plaintiff "would be dead soon anyway" (as overheard in a hallway discussion) , and so they justified any means necessary to break the Trust of George, and re-take the home.  They never attacked the Trust of June and in fact later admitted it was valid, but miss the clear distinction that June's Trust was the controlling Trust as due June  being the initial Trustee of both Trusts, *making George's Trust irrevocable at signing*, and the grant the IRC 2702(b) QPRT was done in place of the partial homeownership by George; in addition to the medical declaration activation  by Dr. Eric Roberts also contributing to its irrevocability, and thus in no case could they seize the entire property regardless.  Further even though the August 8, 2002  order was a complete nullity by 28 USC 1446(d); it would also fail by state law even if Probate 2520 was valid because none of the property belonged to the "Ward or Conservatee", and further no Quiet Title action was plead to grant any court jurisdiction to cancel county recorder instruments.  While as shown infra, Bankruptcy can cancel County Recorder instruments when it is property of the estate; as shown in *In re Isaacs*, and Deutsche Bank Nat. Trust *v.* Pyle cited infra, a cancellation of instrument is not the same as a Quiet Title action, and a Probate Court cannot issue a money judgment directing a Trustee that a clerk can and will sign for in the stead of the Trustee or other owner  unless brought under California Probate 17200 as a full

---

[11]   An overview is found at https://online.boneandjoint.org.uk/doi/abs/10.1302/0301-620x.99b3.38050?journalCode=bjj&

State Court unlimited civil action, requiring a completely separate case and number with plaintiff as in this case the Conservator and the Trustee as a named defendant. Bankruptcy was the only was to stop this color of law process.  Thus the August 8, 2002 order even if not signed under the auspices of 28 USC 1446(d) or a Bankruptcy order would have been a nullity regardless and just as void at signing. See also **Exhibit W** the full original complaint filed as LASC BC602232.

### III.   AVERMENTS OF ACTION – BAD FAITH BY INSURER – WILLFULLY AND KNOWINGLY COMMITTING FRAUD UPON AND BEFORE THE COURT AS A BANKRUPTCY CRIME

3.1   28 USC 1446(d) voids all further activities by a state court once a Federal Removal is perfected by filing a conformed copy of the Notice of Removal with the State Court Clerk of Court from which the action was removed.

3.2   The California Courts both State and Federal, as well as the Ninth Circuit Court of Appeals has taken the position to directly refuse to analyze the merits of this case in accordance well settled and recent precedential rulings as in a manner of color of law rulings to ignore the commands law.

3.3   A third party claimant as in a prior title or lien holder and as a Warranty Deed Guarantor may sue the Title Insurer Title 365 Company directly under theory of contract law for a refusal to analyze a defect in title after a claim is made and the Title Insurer denies the claim.

3.4   When a title defect is created by fraudulent use of a court order voided in a Bankruptcy upon knowledge of same the party withholding Estate property and ignoring the order becomes a criminal tort-feasor by 18 USC 152.

3.5    In USBC CDC LA02-37195ER upon prayer to it that the order recorded as 02-1884046  with the Los Angeles County Recorder was a void order by 28 USC 1446(d), recognized same and formally declared it and the judgment lien created from it for seizure  in violation of the automatic stay as void on November 20, 2002 having been created in violation of the automatic stay, which just recently in 2017 in **IN RE ISAACS,** 569 B.R. 135 (2017) [citing In re Bruel, found at https://www.leagle.com/decision/inbco20170703560 ], stated in footnote 8 "and [in] *In re Breul,* 533 B.R. 782 (Bankr. C.D. Cal. 2015) (defendant violated discharge injunction by recording lien against debtor's property after filing of bankruptcy and by lien's continued existence after discharge)" to clarify an additional way a judgment lien does not survive Bankruptcy – again as was the case here.  See **Exhibit A** docs

3.6    Defendant Title 365 Company in response to a Direct Claim for settlement for the title defect, on March 5, 2018  took and still takes the position of admission that while 02-1884046 was voided, they confuse the fact that while the Bankruptcy court granted relief from the automatic stay to return to state court for "further orders", that the Bankruptcy court did declare the post-petition acts as void which was the filing of 02-1884046 and the request for injunctive relief from the order of August 8, 2002 due 28 USC 1446(d) as "moot" – as it was already void, concluding that the August 8, 2002 order remained in force and valid thus ignoring 28 USC 1446(d).  See **Exhibit Y**

3.7    The resultant "further order" of the State Court was the GRANT of an 11 USC 522(f) lien avoidance motion and to void and vacate via document cancellation of 02-1884046 of the "writ and order" on September 23,2003 which was filed with the Los Angeles County Recorder as document image

03-2952410 titled as a "Restoration of Clear Title" to plaintiff.  **Exhibit Q**

3.8    After discovery of the case of <u>Deutsche Bank Nat. Trust *v.* Pyle</u> cited infra, upon a formal "notice of claim" the defendant ignored plaintiff and he then filed a complaint with office of Dave Jones, the Insurance Commissioner of California, who caused the defendant's reply of March 5, 2018 to be sent in **Exhibit Y** filed as their response, but when it was brought to the attention of the department handling the investigation defendant relied on a void order, a reply was sent closing the investigation claiming it had to go back to court, and then upon direct claim to Dave Jones himself, a Harvard Law graduate, he had another letter generated, again from a non-attorney stating the same.

3.9    It must be noted that under California law, an attorney cannot take a position of ignorance to use of a clearly void order – especially by Bankruptcy or Federal law, as it is dis-barrable offense, but if he has a non-attorney author a letter stating the same, unless a complaint is filed with the Office of Trial Intake of State Bar, such an action will not be reviewed unless that is done.

3.10    Behind the letter of March 5, 2018 in **Exhibit Y** of defendant is the subsequent communications to Dave Jones, which cites and makes clear the California Supreme Court in <u>Association of California  Insurance Companies v Dave Jones</u>, S226529, 1/23/17  has stated that the Insurance Commissioner had a duty to issue an ***order to show cause*** in such a case writing in part:

> A separate statutory provision applies where the Commissioner believes a method of competition, act, or business practice —not defined in Section 790.03‖ nonetheless —should be declared to be unfair or deceptive.‖ (§ 790.06.) ***The Commissioner may issue an order to show cause and initiate*** an administrative proceeding to determine whether the challenged conduct is

unfair or deceptive — and, if determined to be unfair or deceptive, serve a written report so declaring on the insurer. (Id., subd. (a).) When proceeding under this provision, the Commissioner lacks the administrative authority to assess monetary penalties against the insurer or enjoin the conduct, but must instead apply (through the Attorney General) to the superior court for an injunction. (Id., subds. (b), (d).)

3.11   Instead the Office of Dave Jones fell silent refusing to reply once again in effect protecting and insulating the conduct of the defendant  as underwritten by a major California insurer   - First American Title - to which such a judgment of this magnitude of 4.5 million dollars would seriously impact.

3.12   This court  can and should in this case step into the stead of Dave Jones and issue an Order to Show Cause as this is at its root a Bankruptcy matter to determine if this is indeed a criminal matter of concealment as pled..

3.13   This is thus a Petition  / Complaint illustrating a bankruptcy crime where others concocted a scheme to assist to defeat the Bankruptcy code to steal real property of the Debtor and prevent him from pursuing a remedy in any court – that is until he discovered a direct claim as a third party beneficiary was available due recent developments in the law against any title company who insured the doctored and fabricated title and then withheld and neglected their legal duty to analyze and grant or deny the claim and is now requesting mandatory restitution against the criminal actors due their criminal conduct under 18 USC 3663A(c)(1)(A)(ii) due 18 USC 152 and 157.

3.14   African-American and pro se litigants get usually poor respect in the courts especially and often when they are 100% correct against attorneys who are

practicing in fraud upon the court as was and is the case here.

3.15   In this case the law mandates restitution when the prongs of 18 USC 152 are proven against "a person who" in knowledge of the Bankruptcy, ignores and violates orders of the court relating to bankruptcy estate property, and the last "person who" is flouting and violating the orders of the courts and in fact insuring the known "stolen Estate property" to conceal the truth is the defendant Title 365 Company who has actively taken a position that a void order is valid and is ignoring Federal law and especially 28 USC 1446(d)

3.16   Here initially African-American female attorneys struggling to keep a law practice afloat took it upon themselves to create a fraud upon the courts using a repealed law (**Exhibit G**) – repealed as it was being used for exactly the abuses[12] these two proceeded upon in a Probate Court to use once loose Probate discretionary concepts to  change estate planning through use of a Conservatorship to attack existing Estate planning protected under a Trust and Federal trust law found at IRC 2702(b), the Qualified Personal Residence Trust, so they could seize property they knew was free and clear paid for to sell and levy Attorneys fees upon, and when they failed in part due to Bankruptcy and in part due to a Removal action effort they ignored court orders against them to do so anyway and violate 11 USC 524 to continue to use an order already ***void ab initio*** by 28 USC 1446(d) and barred as to use under 11 USC 524.

3.17   A claimant may sue the insurer as a third party beneficiary using traditional

---

[12] Probate 2520 was routinely being used to circumvent Probate 17200 that mandates a full civil action commence as to property issues where a trust is involved

contract principles. Harper v Wausau Ins. Corp. (1997) 56 Cal App 4th 1079, 1086. [https://www.courtlistener.com/opinion/2251693/harper-v-wausau-ins-co/ ] Under California law, third party beneficiaries of contracts have the right to enforce the terms of a contract under CC §1559, which provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it: Traditional third party beneficiary principles do not require that the person to be benefited be named in the contract. Harper v Wausau Ins. Corp., supra.

3.18   This Petition / Complaint  follows the reasoning and ruling of *In re Charles A. Bruel*, 1:05-bk-20645-MT Doc 53 (usdc-cacb) Filed 01/28/14[13] where the Bankruptcy court dealt with a similar issue of creditor continuing stubbornly to try to collect on a real estate lien on a Debtors Bankruptcy Estate, and shows a bankruptcy crime involving stolen Bankruptcy Estate property where in this case the tortfeasors succeeded and then transferred the property several times to give the appearance of legitimacy of title as a "bonafide purchaser" and concealed the true lawful owner being this plaintiff.

3.19   A Federal Court is empowered to conduct and / or consider parallel criminal and civil issues under the law.  In *United States v. Kordel*, 397 U.S. 1 (1970), the Supreme Court stated that "[I]t would stultify enforcement of federal law to require a government agency . . . invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial."

---

[13] http://www.cacb.uscourts.gov/sites/cacb/files/documents/opinions/SV-05-20645-MT_BreulMOD.pdf  also cited as In re Bruel, 533 B.R. 782 (2015) and found at https://www.leagle.com/decision/inbco20150710610 listing cited cases therein

Petition and / or Complaint for Restitution

3.20   The law recognizes "the principle that protection of the public interest may often require proceedings simultaneously on two fronts, and that it would unduly compromise the public interest to force the government to choose between a civil and criminal course of action." *Mainelli v. United States*, 611 F. Supp. 606, 615 (D.R.I. 1985); *see* also *United States v. Lot 5*, 23 F.3rd 359, 364-65 (11th Cir. 1994), cert. denied, 513 U.S. 1076 (1995); *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902-03 (9th Cir. 1989).

3.21   The "mission" of a federal court is "To protect and preserve the rights and liberties of all people as guaranteed by the Constitution and the laws of the United States in a fair and impartial manner."[14]; yet the California courts both State and Federal have acted in a color of law manner refusing to apply the laws as applicable to plaintiff's arguments and this represents one of the, if not the - most "unusual" and "extraordinary" circumstances found in recent legal times, that illustrate why this court should retain jurisdiction.[15]

3.22   Both 18 USC 152 and 157 define coverage as over "a person who" and state applicable time periods at 18 USC 152(8) as "after the filing of a case . . ." or at 18 USC 157(3) as "at any time before or after the filing . . ." and the scope of concealment and fraud in a criminal context regarding a bankruptcy is demonstrated and defined in United States *v*. Harry Herbert Wagner, Jr.,

---

[14] Found on homepage at http://www.mow.uscourts.gov/

[15] See e.g. Atlantic Marine Construction Co. v. U.S. District Court for the Western Dist. of Texas, 134 S. Ct. 568 (2013) [ transfer venue forum selection clause case ]

Petition and / or Complaint for Restitution

382 F.3d 598 (6th Cir. 2004)[16] which defines and covers also acts to "conceal" to extend to frustration and present an appearance to convince others. [i.e. *insuring a void title as a marketable* title knowing it was created by crafting it through a legal document filed as a power of a command of a court using a VOID order] the ***Wagner*** court wrote in part:

> The purposes of § 152, the section's history, and its interpretation by other courts support a broader construction of "conceal," and applying a more encompassing definition does not alter our conclusion. Because the efficiency and manageability of the bankruptcy system relies heavily on the free flow of accurate information, § 152, like the rest of the provisions governing bankruptcy crimes, exists not to protect individual creditors, but rather "***to prevent and redress abuses of the bankruptcy system***." 1 *Collier on Bankruptcy* ¶ 7.01[1][a], at 7-15 (15th ed.2004)  [emphasis added]

3.23    The ***Wagner*** court also opined:

> Several circuits have recognized that § 152 is "a congressional attempt to cover *all* of the possible methods by which a debtor ***or any other person** may attempt to defeat the intent and effect of the bankruptcy law through any type of effort* to keep assets from being equitably distributed among creditors." *United States v. Goodstein,* 883 F.2d 1362, 1369 (7th Cir.1989) (internal quotations omitted) (emphasis added); *United States v. Thayer,* 201 F.3d 214, 226 (3d Cir.1999) (quoting *Goodstein*); *United States v. Shapiro,* 101 F.2d 375, 379 (7th Cir.1939)  [bold, italics, underscore emphasis added]

3.24    Here the Bankruptcy trustee Leonard Brown,  – after meeting with Debtor –

---

[16] Found at https://www.courtlistener.com/opinion/787611/united-states-v-harry-herbert-wagner-jr/  (hereinafter "***Wagner***")

this plaintiff – noticed and understood the ***ab initio*** VOID money judgment nature of the order at issue here, that both 28 USC 1446(d) and the filing of Bankruptcy had in effect automatically voided; and further understood Debtor had concealed nothing and that indeed at best only 50% of the property was in the purview of the Trustee to seize and sell for the benefit of a creditor who appeared also to have an order that was a simple  money judgment of a "***void ab initio***" nature anyway upon which also had an applicable homestead exemption that negated most of any attachable interest in the property and thus took no interest in the property and abandoned it back Debtor – this plaintiff – at the closing of the case.

3.25    If the August 8, 2002 order was valid to except it from discharge, 11 USC 523(a)(4) exists to be used as an adversarial complaint mechanism, but was not filed by the creditor Williams to except the order from discharge based on the "undue influence" issue which would have been "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;" as evidence to the contrary existed that the fraudster was creditor John Williams acting as the Conservator of the Conservatorship of George W. Williams, and the conservatorship did not respond to prove up their order when debtor filed an adversarial complaint for them to adjudicate same. See **Exhibit A page 35**, the adversarial complaint cover of AD03-1756ER

3.26    The issue here is a "VOID" order used to steal, seize and conceal bankruptcy estate property, and that it was actually VOID "***ab initio***" before the filing of bankruptcy obtained by the use of fraud upon the court, and usually an allegation of "fraud on the court" in some previous action requires a new cause of action, such as an "independent action" envisaged by Rule 60(d)(1). In fact, courts read the terms of Rule 60(d)'s savings clause in conjunction,

i.e., that Rule 60 "does not limit the power of a court to entertain an independent action . . . to set aside a judgment for fraud upon the court." Booker v. Dugger, 825 F.2d 281, 283 (11th Cir. 1987) (ellipsis in original); Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978); see also Day v. Benton, 346 F. App'x 476, 478 (11th Cir. 2009) (unpublished) ("[T]he district court may also entertain an independent action to 'set aside a judgment for fraud on the court . . . .'"). Because Plaintiff seeks to maintain a new "action to relieve a party from a judgment, order, or proceeding . . . for fraud on the court," he must establish the elements necessary to maintain an "independent action." See Fed. R. Civ. P. 60(d). As adopted by the Eleventh Circuit, the elements of a Rule 60(d) independent action are as follows:

> (1) a judgment which ought not, in equity and good conscience, to be enforced;
> (2)  a good defense to the alleged cause of action on which the judgment is founded;
> (3)  fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense;
> (4)  the absence of fault or negligence on the part of defendant; and
> (5) the absence of any adequate remedy at law.

Bankers Mortg. Co. v. United States, 423 F.2d 73, 79 (5th Cir. 1970); Day v. Benton, 346 F. 3 App'x at 478.

3.27   Title365 , a company found in Delaware doing business in Delaware has in bad faith, and in a criminal context pursuant to 18 USC 152(8) refused to address, respond to, or settle the claims of plaintiff as shown by the accompanying **NOTICE OF CLAIM** DEMAND LETTERS at **Exhibit V.**

Petition and / or Complaint for Restitution

3.28    Here "fraud upon the court" is not an argument to vacate a judgment; but an argument to retain venue and jurisdiction for Delaware citizens to unlawful color of law treatment by a foreign court jurisdiction that failed to assure proper treatment and judicial analysis and to properly enforce their own orders in plaintiff's favor which the California courts would not enforce even as though their own orders instead as color of law rulings against plaintiff.

3.29    In 2005 a Bankruptcy crime was afoot in the Central District of California to steal Bankruptcy Estate Property of the Debtor with the assistance of the California Courts – both State and Federal by ignoring the mandates of the Congressional directed  and defined Bankruptcy Code.  After property had been returned to the Debtor in USBC LA02-37195ER the creditor[17] ignored a VOIDED order of August 8, 2002 and used it to seize property then belonging to Roy Union, a Delaware Corporation for which plaintiff Burgess had granted an ownership interest to by means of a Warranty Deed.[18]

3.30    It took until mid July 2017 when plaintiff discovered a ruling by the California Court of Appeals in   *OC Interior Services, LLC v. Nationstar Mortgage, LLC*, 7 Cal. App. 5th 1318 - Cal: Court of Appeal, 4th Appellate

---

[17] The creditor was the Conservatorship of George W. Williams, is a now defunct State Probate court entity as George W Williams passed away before LASC BC386697 was decided that ruled that the Estate of June l. Williams was never revoked.

[18] George W. Williams actually held stock in his Living Trust as an asset in Roy Union as granted him in the creation his Living Trust of George W. Williams.

Petition and / or Complaint for Restitution

Dist., 1st Div.  (1/31/2017);[19]   that clearly illustrated what plaintiff had been unsuccessfully arguing the stolen title was void  before the California courts which all had ignored address of refusing to hear the merits of his cases declaring him instead "Vexatious" so as to be done with his averments.

3.31    Then the on July 13, 2017 the California courts – citing *OC Interior Services* - as to the same use of a void judgment scenario went one step further in Deutsche Bank Nat. Trust *v.* Pyle,   D071079   (Cal. Ct. App. 2017) [https://www.courtlistener.com/opinion/4408774/deutsche-bank-nat-trust-v-pyle/ ] to state that "cancellation of an instrument" is not the same as a "quiet title" action, further showing the August 8, 2002 order could not be used to seize property even if it was valid – which is was not – because it had not been brought specifically under the state Statute required.

3.32    An order prepared by the creditor by Atty Gary Ruttenberg as a Probate Volunteer Panelist" (PVP)[20] of August 8, 2002 in Los Angeles Superior

---

[19]  See  https://law.justia.com/cases/california/court-of-appeal/2017/d070680.html or http://www.courts.ca.gov/opinions/archive/D070680.DOC

[20] A misleading term as it is actually not a "volunteer" but rather an Attorney appointed from a pool of attorneys who sign up to be agreed to be drafted by the court in Conservatorship proceedings as a guardian of the Conservatee against both claimants and the conservator who petitions the court who then also gain the right to bill upon any estate the Conservatee might have, and is thus a position of a stranger who can raid and benefit from just keeping the proceeding going as long as possible who at the time in  this case actually billed at $400 per hour, submitted  a bill for $150,000 – a full third of the Conservatee's estate and the chief probate judge – Thomas W. Stoever  reduced it to $25,000 for what amounted to basically doing

Petition and / or Complaint for Restitution

Court (LASC) Case  BP070275 had been signed by the State Court while a Federal removal was in effect averring *inter alia* fraud in the court, while active – and it is thus void by 28 USC 1446(d),[21]  and then was also voided and vacated in Bankruptcy by the hand of the Bankruptcy court also.  See **Exhibit A pages 31 to 33** of USDC CDC 02-06079DDP for evidence the Removal was filed and served on the State Court on August 5, 2002, and

---

nothing but violating state law.  See as cited in **Exhibit W** paragraph  3.92 citing  *In Re Conservatorship of Person and Estate of Moore*, __ Cal.App.4th, Div 6, B253538 (9/30/15) [ http://caselaw.findlaw.com/ca-court-of-appeal/1714439.html ]

[21] "The filing of a removal petition in federal court effects the removal of a state court civil lawsuit to a federal forum.  When a defendant files the appropriate removal pleadings,  federal jurisdiction immediately attaches, the statute places the state court's authority in a state of suspension, and the federal court possesses the power, but not the duty, to invalidate all state court proceedings that have taken place between the time that the defendant filed the removal petition in federal court and the time that the clerk filed a copy of the removal petition in state court.  Assertion of removal jurisdiction places the state court's jurisdiction in a state of suspension until such time as the federal court remands the case to state court.  If the court finds that it does have jurisdiction and that the case has been properly removed, or if the federal court dismisses the cause of action in response to a party's motions, then the removal operates to terminate the state court's jurisdiction.  Any proceedings that occur in the state  court between the filing of a copy of the federal removal petition in the state court and the reinvestment of jurisdiction that occurs upon the remand of the case to the state court are void." which was done in this case.  See David A. Furlow, et al., ***Removal and Remand: When Does a Federal District Court Lose Jurisdiction over a Case Remanded to State Court***, 41 Sw L.J. 999 (1987)

http://scholar.smu.edu/cgi/viewcontent.cgi?article=2695&context=smulr

Petition and / or Complaint for Restitution

then the order at issue here was signed by the court August 8, 2002.

3.33    *In Re Conservatorship of Person and Estate of Moore*, __ Cal.App.4th, Div 6, B253538 (9/30/15) [ http://caselaw.findlaw.com/ca-court-of-appeal/1714439.html ] illustrates a boilerplate for how Conservatorships in California are used to raid and change Estate planning as occurred here.

3.34    It was not until 2014 that the California Courts began to publish standards that mandated and spoke to use of Conservatorships as a "last resort" with no other alternative available action of the courts, but this State court action had already abused the law on the subject causing the harm though use of slander and untruths and a defective order being treated as valid.  See e.g. http://www.courts.ca.gov/documents/BTB23_FRI_Expanding_4.pdf

3.35    This matter was only supposed to be an issue of how much of a stipend the Conservator of the Person was to receive from the Estate which was in the Conservatee's Trust; however in fraud the opposing counsel presented a proposed order which took such grant of liberties in violation of a host of Federal and State law, it resulted in the Removal Petition being filed

3.36    That same order was void on its face by State Law  as the litigant-creditor had not plead any "quiet title" jurisdiction and the jurisdiction of the order which was plead as  California Probate Code 2520 was a repealed law, and thus again the court had no jurisdiction to rule under the repealed law.

3.37    That same August 8, 2002 order was also voided and vacated pursuant to 11 USC 522(f) by the State Court in a Noticed Hearing pursuant to the Bankruptcy Injunction granted plaintiff on September 23, 2003 in BP070275

and that same grant and order was filed as Los Angeles County Recorder image 03-2952410 titled as a "Restoration of Clear Title" as **Exhibit Q.**

3.38    Since  then California courts have proceeded to ignore or issue color of law rulings to circumvent the Bankruptcy to some degree and refuses to address the void nature of the August 8, 2002 whether ***ab initio*** or by bankruptcy in part likely due the fact that plaintiff has been forced to pursue this all pro se.

3.39    What also and tangentially influentially went on in this case was that the Bankruptcy Judge mistakenly  believed he could allow others to carve out an "equitable exception to bankruptcy" by ignoring the command of Congress to apply Bankruptcy law when moved for enforcement of same and thus allowed the state courts to tangentially act to circumvent the 11 USC 524 discharge by his failing act properly.  See  *In Re Gurrola*, <u>328 B.R. 158</u> (9th Cir. BAP 2005)[22] [***Gurrola*** "two"] and as cited therein *Lone Star Sec. & Video, Inc. v. Gurrola,* CC-02-1313-KBaP (9th Cir. BAP 12/ 20/ 2002), [***Gurrola*** "one"] where the 9th Cir BAP reversed the same Bankruptcy court Judge of Debtor, now this plaintiff  "because it is error [for a bankruptcy Judge] to purport to resolve underlying substantive merits in a procedural motion to reopen a case. We [the BAP] explained that underlying substantive disputes should be resolved in a procedurally correct manner independent of the merely administrative reopening issue."

3.40    ***Gurrola***, <u>*supra*</u> represents what was an improper mindset of the Bankruptcy Judge at the time plaintiff's bankruptcy moved through the same court before the same Bankruptcy judge who made the error that caused debtor Gurrola

---

[22] Found at https://www.courtlistener.com/opinion/1842691/in-re-gurrola/

Petition and / or Complaint for Restitution

so much grief because the Bankruptcy Court Judge could would not think and analyze the law properly to rule properly and instead wrote handwritten dicta rulings on the motions themselves.  See **Exhibit A, p19 and 21**

3.41   When it became clear the California Courts both State and Federal were actually under color of law seeking to defeat and ignore the LA02-37195ER Bankruptcy injunction of Debtor, 05-12005-JKF and 05-52205-JKF as a **Chapter** 13 case was filed in this District and assigned Judge Judith K. Fitzgerald on 07/21/2005 and 07/27/05 respectively in part as directed by the California courts in dismissing at least two actions of Debtor seeking to enforce the Warranty Deed of Roy Union.  Though Debtor had moved from California and that case was discharged and closed, The Trustee made a motion to send it to the California Central District Bankruptcy court, without discussing the matter at all with Debtor.  Though debtor was in Delaware and argued at the meeting of the creditors the issues set forth in the Adversarial Complaint filed as 05-52205-JKF, Judge Fitzgerald granted the motion and the case then continued  in California to dismissal without him. The adversarial complaint was a TORT action and the Delaware Bankruptcy court had no jurisdiction it appears to hear the matter by 28 USC 157(b)(5)

3.42   The issue debtor was arguing – albeit too politely - was that the creditor was ignoring the bankruptcy discharge and was attempting to effectively steal debtors property by creating a fraudulent title using the force and effect of the order voided in the Debtor's bankruptcy  and all California courts were allowing and participating in this and refusing to enforce the 11 USC 524 discharge.  Thereafter most recently as in January 2017, the California courts and others have now made clear the illustration of what debtor was saying and arguing at the meeting of the creditors is true under law.

Petition and / or Complaint for Restitution

3.43    Now also again recently in 2016 in *Reese v. Mingramm* CA2/6, B262021 (Cal. Ct. App. 2016),[23] the California Court of Appeals relied on ***Gurrola*** stating again there is no equitable exception to 11 USC 524 and the discharge is "absolute"; but before ***Gurrola*** was decided the Bankruptcy Judge in his case had already allowed the state court to proceed on that very same "equitable exception" to issue "further orders" when in fact he could not by law and was in effect trying to create an 11 USC 523(a)(4) exception without the creditor moving for or proving same.  This is what the BAP reversed in ***Gurrola*** "one" which was *Lone Star Sec. & Video, Inc. v. Gurrola,* CC-02-1313-KBaP (9th Cir. BAP December 20, 2002).

3.44    ***Gurrola*** "two" has this note about 11 USC 362 a.k.a. the automatic stay;

> The automatic stay contains an authorization for annulling the stay, which has the effect of retroactively validating acts that otherwise violated the stay. 11 U.S.C. § 362(d). Although some decisions have favored more stringent standards, we have previously explained that the correct "standard for determining `cause' to annul the automatic stay retroactively is a `balancing of the equities' test." *Fjeldsted v. Lien (In re Fjeldsted)* 293 B.R. 12, 21-25 (9th Cir. BAP 2003); *accord Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.),* 129 F.3d 1052, 1055 (9th Cir.1997).

3.45    While the Bankruptcy Judge DID NOT annul the automatic stay, - striking through that line - he in fact declared the post-petition acts void as violations of the automatic stay; he did at the same time further vacate the related order of August 8, 2002 and denied debtor's petition for a TRO in AD02-

---

[23] https://www.courtlistener.com/opinion/3204605/reese-v-mingramm-ca26/

02571ER to do so writing as a dicta ruling "Denied as moot, order on relief from stay vacates the orders referenced in the TRO." This is a fact that Title 365 Company by their attorneys Akerman LLP, "spins" in stupor and fraud upon the court ignoring the fact that the Bankruptcy Court actually STRUCK the request of annulment of the automatic stay saying the order was void as a violation of the automatic stay and then allowed the movant (the Conservatorship) to return to the State court for "further orders" regarding possession of the property – which again resulted in vacating document 02-1884046 which was the Judicial Lien created by the August 8, 2002 order that Title 365 company claims  allowed the valid seizure of the property. See **Exhibit A beginning at page 19** of a collection of documents.

3.46    When the creditor Williams returned to state court, the actual result was the State Court of Appeals issuing the order found at **Exhibit A** page 13 of May 23, 2003, and then the Superior court issuing an 11 USC 522(f) lien avoidance also on September 23, 2003, which was filed as Los Angeles County Recorder image 03-2952410 so that all had notice the issue as to title was decided as returned to debtor – this plaintiff.  The prayer of the motion which was GRANTED in full on September 23, 2003 read:

> **THEREFORE PETITIONER PRAYS FOR AN ORDER**
> Commanding the County Recorder to Expunge and Remove document image 02-1884046 Judicial Lien discharged in Bankruptcy as ordered by the California Court of Appeals and relevant Federal Law as found at 11 USC 522(f).
>
> *[ "Expunge and Remove" should have properly been prayed as language  "Cancel Document Image and Instrument"]*

3.47    Creditor Williams then anyway later again used the voided order to continue

collection efforts to obtain a new writ of possession and eviction AFTER the State Court had also vacated the August 8, 2002 order as to debtor – this plaintiff – referenced above  and  the new order which was of course void at issuance but the Sheriff would not stop and executed on it anyway.

3.48   Then four years later on August 31, 2007 Creditor Williams recorded a forged deed at a clerks hand; again citing Los Angeles County Recorder image  02-1884046 – the same writ and order that the Bankruptcy court had voided and vacated on November 20, 2002  writing "Denied as moot, order on relief from stay vacates the orders referenced in the TRO."; in essence then reviving the discharged $400,000 debt, and as one the state court had followed issuing an 11 USC 522(f) lien avoidance upon.  See **Exhibit S**

3.49   When LASC BC602232 was filed all the previous averments were made clear in what is attached as **Exhibit W;** the complaint in that case[24] – as defendant herein, participated in a conspiracy and directed and devised a scheme and artifice to defraud plaintiff  of his right to his property as ordered free and clear to him. by falsely claiming the fraudulent title created on August 31, 2007 was a clear and marketable title the purpose of executing such scheme and artifice, delivered to the lender, when in truth and in fact, as defendant well knew and assured they did know by issuing said title policy in bad faith designed to conceal the true owner and in violation of 18 U.S.C. § 157.

3.50   Lastly the BAP in ***Gurrola*** "two" dispelled the issue that any equitable exception to discharge exists as no 11 USC 523(a)(4) action had been filed;

---

[24] "LASC" is the shorthand abbreviation for the  Los Angeles Superior Court , and Exhibits A through Exhibit U herein are those exact Exhibits of that case.

citing to *In Re Raanan*, 181 B.R. 480 (Bankr. C.D. Cal. 1995) stating

> " . . . the Bankruptcy Code is so specific with respect to a plethora of statutory nondischargeability theories that it does not admit of the nonstatutory, general equitable nondischargeability remedy that the *Raanan* court fashioned. Third, for reasons we have already explained, the anti-waiver provisions of § 524(a) forbid the use of such waiver theories to revive a prepetition debt that is not otherwise nondischargeable and *forbid a sanction of reviving the discharged debt*. Hence, we are not persuaded by *Raanan*.",  [bold and italics emphasis added]

which the BAP in *Gurrola* "one" had addressed as improper procedure.

3.51    In *OC Interior Services, LLC v. Nationstar Mortgage, LLC*, 7 Cal. App. 5th 1318 - Cal: Court of Appeal, 4th Appellate Dist., 1st Div.  (1/31/2017);[25] the Court of Appeals of the State of California has finally stated that use of a VOID order in reliance to create a marketable title actually breaks the chain of title to all future purchasers, leaving any title company that might be so unwise as to insure the title of the property liable for damages to any injured party.  Prior to this date Debtor had no proof of law to assert this claim.

3.52    Previously in a similar case of a creditor ignoring the bankruptcy discharge in the same manner as here  of  *In re Charles A. Bruel*, 1:05-bk-20645-MT Doc 53 (usdc-cacb) Filed 01/28/14.   The California Central District Bankruptcy court made clear that pursuing a lien (or foreclosure or seizure) on a property with a voided order from a bankruptcy can and should  result

---

[25]  See  https://law.justia.com/cases/california/court-of-appeal/2017/d070680.html or http://www.courts.ca.gov/opinions/archive/D070680.DOC

Petition and / or Complaint for Restitution

in a plethora of punishments for doing so.[26]  Thus a Federal court could use anything at its disposal to enforce the discharge injunction if moved to do so.

3.53   The California Insurance Code defines "bad faith" at section 790.03(b) and (e) and (h)(5) and (h)(12) which in minimum dovetails to 11 USC 152(8) when "concealment" is concerned of bankruptcy estate property as to public records translating statutory bad faith into federal criminal activity.[27]

3.54   Here however, not only was bankruptcy estate property seized and effectively stolen, the stolen nature of it was concealed by Title365  Company then insuring it in continuation of a fraudulent scheme to convert the property to others as a marketable and clear title when they full well knew it was not.

3.55   When notice of claim was sent formally to Title365 Company as required under California law prior to bringing a Direct Action against them – it was ignored.  The LASC BC602232  action had been brought in which Title365 Company *refused to timely defend and went into default* – but *paid* for a defense to obfuscate the law as a fraud upon the court knowing full well the female Judge would look for and find some way to protect the theft also.  As incredulous as this all sounds, while that litigation was going on the California Court of Appeals had not yet decided *OC Interior Services, LLC*

3.56   Finally, even California State Superior Court Judge Ruth Ann Kwan (the wife

---

[26]  See again the online copy at (http://www.cacb.uscourts.gov/sites/cacb/files/documents/opinions/SV-05-20645-MT_BreulMOD.pdf

[27] See e.g. on the issues of how Bankruptcy Fraud and crimes slip by unprosecuted http://law.emory.edu/ebdj/_documents/volumes/31/2/clement.pdf

Petition and / or Complaint for Restitution

of Bankruptcy court Judge Robert Kwan) in LASC BC 386697 had ruled upon agreement of the creditor-movant that since one of the Trusts granting the property to debtor (this filer) had not been revoked, that the Estate of June L. Williams was active and remained valid as the creditor's counsel had admitted in open court. ***This meant that 50% of the subject property was not subject to the order of August 8, 2002 – void or voided in Bankruptcy or not;*** and then the August 8, 2002 order was also void itself absent bankruptcy because no court had jurisdiction to seize the full property.

3.57   Judge Kwan ruled against the plaintiff as a personal claimant, but created a litigant and ruled in favor of the Estate of June L. Williams' – not a named litigant party of whom the plaintiff was the known Trustee; because June's Trust was still valid and as even admitted by the Conservatorship's attorney.

3.58   This ruling of Judge Kwan affirmed the void nature the August 8, 2002 order on other grounds that the entire property could not be seized.

3.59   However this kind of this theft by fraudulently creating and filing Title documents is common and always creates a null and void title with no statute of limitations as to pursuit to recover the property or restitution therefore. It is just that when done to Bankruptcy Estate property – it is a federal crime as here. See 18 USC 152(8) which does not speak to a closed or open state of a "perpetual" Bankruptcy estate in a permanent discharge injunction.[28]

---

[28] See how estate is "perpetual" and take Judicial Notice under Fed. R. Evid 201 of http://www.mow.uscourts.gov/sites/mow/files/FWK_2016_Preclusion_and_Estoppel_John_Rao.pdf

Petition and / or Complaint for Restitution

3.60   In this case California has gone one step further as in essence declaring in its law that a prima facie crime need not be prosecuted by the State itself and determined to be one if one is caught, or aiding one, with the property by even simply documented means *a civil action instead may be instituted to collect treble damages*.  This fact summons the issues of ***Bell v. Feibush*** , 212 Cal. App. 4th 1041 (2013),[29] in that Title365  appeared, paid for and actively worked to withhold property that clearly is fraudulently titled, and brings a Direct Action right on themselves as an entitlement against them by summary adjudication as to treble damages of the property value.

3.61   By Federal Law a Federal Court MUST award restitution under 18 USC 3663A(c)(1)(A)(ii) which in this case by California law is a minimum of three times the value of the property which at the time of filing LASC BC602232  was approximately 1.5 million dollars which in turn is thus 4.5 million dollars or more.  No California court will even "look" at following the law due what liability it now represents to all those involved.

3.62   Normally 18 USC 3663A(c)(1)(A)(ii) speaks to a "conviction" or "plea agreement" of a criminal offence – "in sentencing"; after the bringing of "charges" by the US Attorney; however in a Bankruptcy matter, nothing states a US Attorney must bring the action where existing orders and documentation as documented evidence exists which is clearly recorded for the court to take judicial notice of under Federal Rules of Evidence 201, and as the defendant is a "corporation" with direct liability that said corporation itself has established, the "sentencing" IS the treble damage restitution as by California law set forth in the attached Demand letters sent to CEO **Eric D.**

---

[29] https://www.leagle.com/decision/incaco20130115045

**Swenson** attached as **Exhibit V** as required by California's "direct action" law under California Insurance Code Section 11580(b) due to the DUTY of the Insurer to investigate and settle upon a claim by a claimant.

3.63   The March 5, 2018 response of Title 365 Company establishes violation

3.64   This involves a creation of and perpetration of a scheme by use of a fraudulently created Title to property using an ***ab initio*** void and voided by bankruptcy order to seize it and re-title it fraudulently and California Law defines this as criminal conduct exclusive of the bringing of Criminal charges and compensable as "restitution" in the form of "treble damages" of the value of the property. See ***OC Interior Services, LLC v. Nationstar Mortgage, LLC***, 7 Cal. App. 5th 1318 - Cal: Court of Appeal, 4th Appellate Dist., 1st Div. (1/31/2017); where the Court of Appeals of the State of California has made clear that use of a VOID order breaks the chain of title to all future purchasers, leaving any title company that might be so unwise as to insure the title of the property liable for damages to any injured party.

3.65   Recently in ***OC INTERIOR SERVICES*** the court clearly wrote ***"We conclude that a void judgment in the chain of title has the effect of nullifying a subsequent transfer, including a transfer to a purported bona fide purchaser. Gray v. Hawes (1857) 8 Cal. 562 (Gray), an almost 160-year-old California Supreme Court opinion supports our conclusion."***; which summons the issues of Bell v. Feibush, 212 Cal. App. 4th 1041 (2013) that cites and references California Penal Code 496 as a criminal act not requiring criminal conviction. In ***Bell***, the court opened its opinion as thus:

> Penal Code section 496, subdivision (a) (section 496(a)) makes receiving or buying property "that has been obtained in any

manner constituting theft" a criminal offense punishable by imprisonment. Section 496, subdivision (c) (section 496(c)) provides that any person "who has been injured by a *violation of* [section 496(a)] ... may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." (Italics added.)

. . .

We hold, based on the statutory language, a criminal conviction under section 496(a) is not a prerequisite to recovery of treble damages under section 496(c). We also hold the phrase "any manner constituting theft" under section 496(a) includes theft by false pretense. We therefore affirm the judgment.

3.66   In California there is a "duty to settle" of Insurers, and while most of the notable cases involve "auto insurance", failure to settle can give rise to a "bad faith case"; and defendant was give this opportunity in Los Angeles Superior Court Case (LASC) BC602232, [**Exhibit W**] in which instead Title365  defaulted and then tortuously defended as to the facts in violation of state law and in a state of default, and yet the courts themselves played such machinations themselves  under and into Color of Law on behalf of the defendant – excusing them to law – that plaintiff upon establishing this was criminal conduct and fraud in the courts – dismissed the case without prejudice in favor to bring the action properly in a Federal Tribunal.

Liability insurance usually "imposes Two Separate Obligations on the insurer," to defend the insured and indemnify the insured against covered claims.  (Howard v. American National Fire Ins. Co. (2010) 187 Cal.App.4[th] 498, 519.)  The duty to defend is well known to be Broader than the duty to indemnify. It encompasses any claim which "Potentially seeks damages within the coverage of the policy."  (Gray v. Zurich Ins. Co. (1966) 65 Cal.2d 263, 275.)

The duty to defend provides context for the duty to settle. This is because an insurer's duty to settle exists before judgment and factual findings on claims, which are necessary to ultimately determine insurance coverage. Thus, an insurer must discharge its duty to settle often without the benefit of facts necessary to know whether or not there is actual coverage.

Under California law, an insurance company has a duty "to make Reasonable Efforts" to settle lawsuits against its insured. (PPG Industries, Inc. v. TransAmerica Ins. Co.(1999) 20 Cal.4th 310, 312.) California law imposes a duty to settle "to Protect The Insured from exposure to liability in excess of coverage." (Murphy v. Allstate Ins. Co.(1976) 17 Cal.3d 937, 941.) This is necessary so the insured does not suffer "as a result of the Insurer's Gamble" not to  accept a reasonable settlement, a gamble "on which only the insured might lose." (Id.) Thus, the insurance company's duty to settle protects the insured by imposing on the insurance company the risk of a judgment above policy limits where a reasonable settlement offer is rejected.

"The Only Permissible Consideration" with respect to the duty to settle is "whether . . . the ultimate judgment is likely to exceed the amount of the settlement offer." (Johansen v. California State Auto Ass'n Inter-Insurance Bureau (1975) 15 Cal.3d  9, 16.) An insurance company's "Belief that the policy does not provide coverage" is not a basis to refuse a reasonable settlement offer. (Howard, supra, 187 Cal.App.4th at 525.)

An insurer who fails to accept a settlement within the policy limits by not giving the insured's interests at least as much consideration as its own, is

liable for any resulting judgment against its insured regardless of policy limits. Crisci v. Security Ins. Co. of New Haven, 426 P.2d 173 (Cal. 1967)[30]. One test that has been applied is to consider whether a prudent insurer without policy limits would have accepted the settlement offer.

The ***Crisci*** court wrote in part:

> ***Several cases, in considering the liability of the insurer, contain language to the effect that bad faith is the equivalent of dishonesty, fraud, and concealment***. (See Critz v. Farmers Ins. Group, supra, 230 Cal.App.2d 788, 796; Palmer v. Financial Indem. Co., 215 Cal.App.2d 419, 429 [30 Cal.Rptr. 204]; Davy v. Public National Ins. Co., supra, 181 Cal.App.2d 387, 396.)  Obviously a showing that the insurer has been guilty of actual dishonesty, fraud, or concealment is relevant to the determination whether it has given consideration to the insured's interest in considering a settlement offer within the policy limits. The language used in the cases, however, should not be understood as meaning that in the absence of evidence establishing actual dishonesty, fraud, or concealment no recovery may be had for a judgment in excess of the policy limits. Comunale v. Traders & General Ins. Co., supra, 50 Cal.2d 654, 658-659, makes it clear that liability based on an implied covenant exists whenever the insurer refuses to settle in an appropriate case and that liability may exist when the insurer unwarrantedly refuses an offered settlement where the most reasonable manner of disposing of the claim is by accepting the settlement.  Liability is imposed not for a bad faith breach of the contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing. Moreover, examination of the balance of the Palmer, Critz, and Davy opinions makes it abundantly clear that recovery may be based on unwarranted rejection of a reasonable settlement offer and that the absence of evidence, circumstantial or direct, showing actual dishonesty, fraud, or concealment is not fatal to the cause of action. [bold and italics emphasis added]

---

[30] Found at https://scocal.stanford.edu/opinion/crisci-v-security-ins-co-30069

The duty to settle extends beyond the coverage terms of the policy.   The California Supreme Court has held that the insurance company has a duty "to settle in an appropriate case although the express terms of the policy do not impose such a duty."  (Comunale v. Traders & General Insurance Co. (1958) 50 Cal.2d 654.)  It is not reasonable or good faith conduct for an insurance company to refuse to settle based on a "No Coverage position."  (Howard, supra, 187 Cal.App.4th at 531.)  See also **Exhibit X**

However in the aspect of Title Insurance, the contract for insurance actually insures a third party as a beneficiary to be compensated if a defect in title is missed or exists.    A third party may qualify as a contract beneficiary where the contracting parties must have intended to benefit that individual, an intent which must appear in the terms of the agreement.    It is sufficient if the claimant belongs to a class of persons for whose benefit it was made.    Case law applying this statute has held "[t]he third party need not be identified by name.   Civil Code section 1559 provides "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."  See Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman (1998) 65 Cal.App.4th 1469, 1485-1486, 77 Cal.Rptr.2d 479;  see also Harper v. Wausau Ins. Co. (1997) 56 Cal.App.4th 1079, 1086-1087, 66 Cal.Rptr.2d 64.) and violation of this falls under California Business and Professions Code 17200 where the definition is "
As used in this [that] chapter, ***unfair competition shall mean*** and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code, where in accord California Insurance Code

Section 790.03.; "The following are hereby defined as unfair methods of *competition and unfair and deceptive* acts or practices in the business of insurance." at 790.03(h)(2),(5) and (12) as thus:

- (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

- (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

- (12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

3.67   Under California insurance regulations and law there is a procedure to initiate third party bad faith litigation directly against the insurance company in title insurance claims and it is outlined in the January 22, 2018 letter to Title365 company; a procedure which was followed by plaintiff.  See **Exhibit V**

3.68    The court may and should take notice of the proofs of fact in the criminal context as 18 USC 152(8) provides as subsection (8) provides:

> A person who...after the filing of a case under title 11 or in contemplation thereof, knowingly *and fraudulently conceals*, destroys, mutilates, falsifies, or makes a false entry in any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor; shall be fined..., imprisoned..., or both. [bold and italics added]

> To sustain the charge that a person concealed, destroyed or falsified records after the filing of a case in bankruptcy, the government must prove that:

> 1. a bankruptcy proceeding existed;
> 2. the defendant concealed, destroyed, or mutilated the documents;

Petition and / or Complaint for Restitution

3. such documents related to the property or financial affairs of the debtor; and

4. the defendant acted knowingly and fraudulently.

3.69  This complaint establishes 1 through 4 above by recorded documentation under Federal Rules of Evidence 201 and the US Attorney is not required.

3.70  In the case of "Title Insurance" the "insured" is actually also a prior owner or claimant that their property was not wrongfully taken by fraudulent creation of titling documents, and this was evidenced recently in several cases – the most notable being ***Ticor Title v Reed***, case 11-L-627 where a default judgment ensued behind a fraudulently created "Title" document and notarized without the presence of the owner which properly resulted in the title company compensating the displaced owner financially.  See and take notice of under Federal Rules of Evidence 201 of that case at **Exhibit X**

3.71  The interesting thing in this case is that 18 USC 152(8) creates a "criminal conviction" of sorts by notice through bad faith if the notified Insurer fails or refuses to investigate and act accordingly in accord what any investigation would show the legal defect in title as the ***Crisci*** court concluded.[31]

## NO ABSURD RESULT IS CREATED

3.72  Plaintiff was the true rightful owner of 1715 S Victoria Ave, Los Angeles CA,

---

[31] See also https://www.beankinney.com/media/publication/12_JBD%20-%20More%20Than%20They%20Bargained%20For%20_00104890_.pdf and http://www.mvplaw.com/post/articles/bad%20faith.pdf

Petition and / or Complaint for Restitution

90019 and the current title holder has at best a "bare title".   (1715)   Plaintiff was the absolute undisputed lawful owner in fee simple of at minimum 50% of 1715 before he granted title to Roy Union; as the Trust of June. L. Williams was not challenged nor revoked and was properly drafted, signed with witnesses and funded by recording the title deed lawfully severing joint tenancy well before June passed away.   In a null act in void jurisdiction pursuant to Probate 21350(a), as an excluded person by Probate 21351, the Probate Court issued an order founded on undue influence used to seize the property from plaintiff, when in fact no influence could be – as plaintiff was related by blood and marriage, June L. and George W. Williams; to the grantors. [Probate 21351]  Plaintiff, then and now the trustee of the June L. Williams Living Trust Agreement, was ceded 50 % of the Property by the outgoing trustee – Karen D. Sparks of the share she inherited in the passing of June L. Williams and 50% of the remaining share as stock for an investment of Roy Union, a then Delaware corporation the grantors knew and sought to invest in for alternative fueling products and publishing unlawfully evicted in 2006.  See **Exhibit T**

1715 South Victoria Avenue, Los Angeles, CA 90019, legally described as

The Northerly 35 feet of Lot 3 and the Southerly 15 feet of Lot 2, in Block 4 of La Fayette Square, in the City of Los Angeles, as per map recorded in Book 21 pages 82 and 83 of Maps, in the Office of the County Recorder of said County of Los Angeles

3.73    In the order of August 8, 2002, upon which all the issue of title is based, the Probate order begins setting out the VOID jurisdiction of the court as to

Petition and / or Complaint for Restitution

A. "**Directing the Trust** to Transfer Real Property . . ." and for

B.  Substituted Judgment Authorizing Conservator to Terminate Trust . . ."

. . .

IT IS HEREBY ORDERED AS FOLLOWS:

The Petition, as Supplemented of JD Williams for Order Authorizing and **Directing the Trust** to Transfer Real Property to John D. Williams as Conservator  for George W. Williams. Probate Code Section 2520 is granted and the   Objections thereto filed by Sparks are   overruled   and the Court further orders as follows: . . .

However the court had no jurisdiction to do either, as no Probate 17200 Petition had been filed in regards to "A" and as to "B" the court cannot terminate and substitute its judgment regarding an irrevocable trust.   There was no longer any Probate Code 2520[32] at the time of the hearing and Probate

---

[32] See *Governing Board v. Mann* (1977) 18 Cal.3d 819, 829 and as cited therein; *Rankin v. Longs Drug Stores California, Inc.*, 169 Cal. App. 4th 1246 (Cal. Ct. App. 2009)  The court was clear in *Governing Board* that "a long and unbroken line of  California decisions establishes beyond question that the repeal of the district's statutory [court's] authority does affect the present action. As we shall explain, the cases uniformly hold that where, as here, the government's [court's] authority rests solely upon a statutory basis, "a repeal of such a statute without a saving clause will terminate all pending actions based thereon. ... 'If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal. The reviewing court must dispose of the case under the law in [18 Cal. 3d 823] force when its decision is rendered.'" (Southern Service Co., Ltd. v. Los Angeles (1940) 15 Cal. 2d 1, 11-12 [97 P.2d 963].) Accordingly, since the Legislature has now withdrawn the school district's authority to dismiss defendant on the basis of his possession of marijuana conviction, the trial court judgment in favor of plaintiff must be reversed." [bold bracket emphasis added]

Petition and / or Complaint for Restitution

2580(B)(11) did not and could not apply to an irrevocable trust, thus the court was void of jurisdiction on the matters that the ruling relied upon. Furthermore most importantly ***"The legal effect of a judgment entered against a trust, a nonentity, is at issue. A judgment against a trust, rather than against its trustees, is not enforceable."*** *PORTICO MANAGEMENT GROUP, LLC, HARRISON et al.,* 202 Cal.App.4th 464 (2011)   Court of Appeals of California, Third District.   December 28, 2011.   See also now again Deutsche Bank Nat. Trust *v.* Pyle, D071079 (Cal. Ct. App. 2017)

3.74   Regarding both "A" and "B" above of the August 8, 2002 order; both notions were founded in contrived arguments as frauds upon the court of "undue influence" of which the court had no jurisdiction due to Probate 21351.

3.75   The August 8, 2002 order is void by lack of jurisdiction under Probate 2520, Probate 2520 is not and never was a "quiet title jurisdiction action" [ See again Deutsche Bank Nat. Trust *v.* Pyle, D071079 (Cal. Ct. App. 2017) ]   and void by lack of jurisdiction in accord Probate 21351 and by Bankruptcy Injunctive relief, and was vacated by the court 9/23/03 as in **Exhibit A and Q;** and, at section 1(d) declares void  County Recorder images "01-1826782, 01-1869234, 01-2400920 ,02-0586382 and 02-0568383 are null and void and of no force or effect" which indeed is NOT valid – these images are all valid.[33]

3.76   In reality 3.73 to 3.75   above are moot – because Bankruptcy voided the

---

[33] As Judge Thomas W. Stoever explained in his order of September 23, 2003, a court cannot order the County Recorder images deleted or declared void, it can only "cancel" or enter a new order as to the subject item or property of the image .

order of 8/8/02 used to create the fraudulent transfer of title as **Exhibit S** after unlawfully evicting plaintiff, and 18 USC 152(8) thus applies because defendant Title365  KNEW of the Bankruptcy and subsequent restoration of title to plaintiff as evidenced by document **Exhibit Q** – Los Angeles County Recorder image 03-2952410, upon which they based their insuring the property as to "clear title" and then in LASC BC 602232 clearly established that Title365  Company had no intention to return or compensate the party for the "stolen property" they had just insured as "clear title" as defined by CA Penal Code 496, defendants' hired counsel even so much as used in evidence in LASC BC602232 confusing it as "clearing title" to the purchaser.

3.77    As Defendant Title365 Company both refused to settle and 18 USC 152(8) is clearly established as proven to the prongs of proof required in the criminal context -- even by a corporation, the applicable standard set forth by Bell v Feibush applies in three times the current value of the property which is in the neighborhood of 4.5 million dollars *as restitution due the plaintiff*.

## CASE HISTORY AND PRIOR AND RELEVANT LITIGATION

3.78    A party injured by a violation of the discharge injunction has no private cause of action for damages under § 524 or § 105. Walls v. Wells Fargo Bank, 276 F.3d 502, 504 (9th Cir.2002). Rather, a violation under § 524(a) is enforced through the bankruptcy court's contempt authority under § 105(a). Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir.2002); Walls, 276 F.3d at 507; however in the case of personal injury tort violations only the District court has jurisdiction per 28 USC 157(b)(5) and these are issues of the failure and violation of due process requirements by the California courts.

3.79   Regardless in this case, this plaintiff is seeking to enforce state court orders which this court has inherent power to enforce in the civil context under tort.

3.80   A "third party claimant" is "any person asserting a claim against any person or the interests insured under an insurance policy" 10 Cal Code Regs §2695.2(x). See also Zhang v. Super. Ct. - 57 Cal.4th 364; 159 Cal.Rptr.3d 672 (2013)  n2 ("Claims by injured parties against a liable party's insurer are third party claims"); Montrose Chemical Corp. v. Admiral Ins. Co. - 10 Cal. 4th 645, 42 Cal. Rptr. 2d 324, 897 P.2d 1 (1995).., (generally under third party coverage" the carrier assumes a contractual duty to pay judgments the insured becomes legally obligated to pay"). In the title insurance context, typical third party claimants are lien holders in real property insured by a title policy. See §§11.51-11.58[34] for additional examples of third party  claimants in title insurance disputes.

3.81   ***The term "claimant" in the regulations includes both first party and third party claimants***. 10 Cal Code Regs  §2695.2(c).  The regulations acknowledge that a claim may be initiated by either a first party claimant or a third party claimant by sending a "notice of claim" to the insurer. 10 Cal Code Regs §2695.2(n).  [bold and italic emphasis added]

3.82   In the title insurance context, it is the real property insured by a title policy

---

[34] See **California title insurance practice**, Authored by: Janis LaRoche Blanchette (and three others), Published in Oakland, California by the Continuing Education of the Bar--California, [1997]- as a continually updated resource : Updating loose-leaf : English : Second edition,  ISBN 9780762625444 0762625449 as a legal authority to these averments.

Petition and / or Complaint for Restitution

and in this context a judgment is against the title company, Title365 as on September 23, 2003 the court had ALREADY ruled placing a "judgment" upon the title company who then later insured the "stolen property" upon a title using an unauthorized signature as in Ticor Title v Reed. **Exhibit X**

3.83   10 CCR § 2695.5[35] at section (e) directs all insurance policy licensee issuers:

(e) Upon receiving notice of claim, every insurer shall immediately, but in no event more than fifteen (15) calendar days later, do the following unless the notice of claim received is a notice of legal action:

(1) acknowledge receipt of such notice to the claimant unless payment is made within that period of time. If the acknowledgement is not in writing, a notation of acknowledgement shall be made in the insurer's claim file and dated. Failure of an insurance agent or claims agent to promptly transmit notice of claim to the insurer shall be imputed to the insurer except where the subject policy was issued pursuant to the California Automobile Assigned Risk Program.

(2) provide to the claimant necessary forms, instructions, and reasonable assistance, including but not limited to, specifying the information the claimant must provide for proof of claim;

(3) begin any necessary investigation of the claim.

3.84   Failure to comply with 10 CCR § 2695.5 at section (e) as directed is defined

---

[35] Available at

https://govt.westlaw.com/calregs/Document/IBF8239B0D49211DEBC02831C6D6C108E?viewType=FullText&originationContext=documenttoc&transitionType=CategoryPageItem&contextData=(sc.Default)

as "bad faith" as California has addressed bad faith insurance conduct through both legislation (unfair claims practices) and by common law (implied covenant of good faith and fair dealing).  In 1972, California adopted its Unfair Claims Practices Act which sets forth specific types of conduct which are considered by definition unfair.   In its present form, Section 790.03(h)  of the California Insurance Code provides it is in essence "bad faith" in part as follows:[36]

(1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue.

(2) Failing to acknowledge ***and act reasonably*** promptly upon communications with respect to claims arising under insurance policies.

(3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

. . .

(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

(6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

(7) Attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application.

. . .

---

[36] Items 2,5 12 and 13 at 790.03(h) are of particular relevance in this matter

(11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

(12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

(13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

3.85   **Exhibit W** provides a thorough history of when notice of the claim as knowledge of a total loss of title existed, except to add the below issues.

3.86   The only thing that can address what appears to have now lately happened and is ongoing is that all female jurists and court officers continue to influence this matter under color of law as fraud in and by the courts.

3.87   The female has a different brain than that of a male and this is scientific fact, as shown in many medical journals and prominently in a well known book which started a bit of firestorm on the subject titled ***The Female Brain*** by LOUANN BRIZENDINE, M.D., a neuropsychiatrist at the University of California, San Francisco, is the founder of the Women's and Teen Girls' Mood and Hormone Clinic. She was previously on faculty at the Harvard Medical School and is a graduate of the Yale University School of Medicine and the University of California, Berkeley, in neurobiology, where the basic thesis is that the female brain is driven by emotion and social needs and the male brain is driven more so by logic suited for mechanical problem solving;

and plaintiff submits for this reason there was and is an innate need among legal females to defeat the male of the species at almost any cost, and is further echoed prevalently throughout society and in reality broadcast media.

3.88   Once defeated – as trapped by their own poor logic to pursue a legal issue that was not viable, the female attorneys involved resorted to a cast off of the law and pursued unlawful means relying frauds presented to the court on the hope and issue that a California largely now female run legal system would support them and cover and excuse their transgressions.[37]

3.89   Plaintiff has no problem with females in the law except that they tend to

_____

[37] Under Governor Jerry Brown and prior under Governor Schwarzenegger, large amounts of female court officers have been appointed to both State and Federal positions, who then refuse to analyze the law on issues where other females are in peril for transgressions and this covers the entire legal spectrum in Southern California from the US Attorney to current chief judges of the Bankruptcy, US District, Superior and Supreme Courts of California, as well as a female led and controlled division of the Court of Appeals and California commission on Judicial performance, California State Bar and enough legal arms of government that transgressions are ignored and further – this plaintiff has been told by at least two attorneys and has seen – that when a female judge is assigned – mysteriously law firms have female attorneys they almost always assign the case, and the end result are rulings which are non-sense or do not address the merits of that before the court to defeat a male claimant in the court especially if in this case female attorneys are in legal peril – which amounts to color of law rulings no one will investigate.  In essence the females will NOT under any circumstance rule again another female in the legal profession – as they "feel" they have fought too hard to get to that level  or they feel for a female who has a family or as a single mother children to support.

Petition and / or Complaint for Restitution

confuse their emotions with logic and when the law is not followed as directed or their logic is defeated that is often one that results in criminal activities that they perform in an attempt to "win" that they traditionally do not see as such as is the case here; but then a jurists who enjoys immunity as in the case of a female judge finds others females in front of her in "trouble" they too rally and under immunity will rule under color of law for them – knowing full well the likelihood of being prosecuted for same is so nil it is negligible, and when adjudication by female jurists can be controlled all the way to the California Supreme Court where 4 of the 7 jurists are females including the Chief Judge; the cards are stacked against due process and the law itself as is the case here as a fair reader of this averment must admit.

3.90   The other problem less obvious is that California as a state as a whole rejects Federalism, which has been evident from the admission of and how and why the state was admitted to the union where many people of Hispanic  Mexican origin lost their property which in the end has created a true malaise in California society at the core of unhappy citizens who come to be revenge types and sociopathic thieves like what happened to them, where many of the Federal Judges in the southern California region are simply elevated State court judges who are not scholars of Federalism who resist any command or inclination to rule against their brethren and friends in the State courts especially where Federal laws will usurp power of the State Courts, especially when a prejudicial violation of due d]process and equal protection has occurred as is here as California simply bucks Federal law and always has often to color of law ways to thwart US Constitutional rights.

3.91   There were and are at least nine different ways the order which seized plaintiffs property was void but courts at the hand of female jurists and court

officers as opposing counsel also have ignored address of the issues as the August 8, 2002 order that was ***ab initio*** void at issuance on its face.

1.  In LASC BP070275 Probate 2520 was plead as a repealed law – by California law, the court had no jurisdiction hear or adjudicate the matter
2.  Undue Influence was not plead and was inapplicable anyway in LASC BP070275 by Probate 21350 as prohibited due blood or marriage relation[38]; had it  been plead the matter could have been dismissed in pre-trial motions,
3.  In LASC BP070275 no Probate 17200 petition was filed to gain jurisdiction over two ***irrevocable*** trusts, one of which is a Federal QPRT trust, the State Court has no jurisdiction to adjudicate upon.  See . In re:  Ferrante,[39]
4.  In LASC BP070275 no "quiet title" statute in any pleading was pled, it was thus a money judgment a Probate court cannot issue which discharged by 11 USC 524, and a Probate court has no jurisdiction to issue quiet title orders either, as a separate action before the full superior court would have needed to be brought plead under the quiet title statutes or for partition.
5.  In LASC BP070275 Karen Sparks was no longer a trustee, nor owner of the property any longer.

---

[38] What constitutes "Undue Influence" is not defined in the California Probate Code; *what is defined is a class of persons who are exempt from judgment of that sort*, of which plaintiff and his then wife were members of that class, and further the estate planning in place since 1994 amended to the trusts carried forward that same estate planning without change, and further the reason was to legally accomplish Grantor's healthcare needs.  See e.g http://www.courts.ca.gov/documents/UndueInfluence.pdf

[39] NON-PUBLISHED OPINION explaining the nature of QPRT and its nature found at https://www.courtlistener.com/opinion/2831235/in-re-robert-ferrante/

Petition and / or Complaint for Restitution

6. In LASC BP070275 the order was further signed as a "knee jerk" by the court in anger during a Federal Removal voiding it at issuance.  See 28 USC 1446(d) and **Exhibit A p19 and 21** of the complaint of LASC BC602232.[40]

7. In LA02-37195ER the Bankruptcy court then voided the order on November 20, 2002 shown above.[41]

8. In LASC BP070275 the State Court of Appeals did the same at **Exhibit A page 13** on May 23, 2003

---

[40] "The filing of a removal petition in federal court effects the removal of a state court civil lawsuit to a federal forum.  When a defendant files the appropriate removal pleadings,  federal jurisdiction immediately attaches, the statute places the state court's authority in a state of suspension, and the federal court possesses the power, but not the duty, to invalidate all state court proceedings that have taken place between the time that the defendant filed the removal petition in federal court and the time that the clerk filed a copy of the removal petition in state court.  Assertion of removal jurisdiction places the state court's jurisdiction in a state of suspension until such time as the federal court remands the case to state court.  If the court finds that it does have jurisdiction and that the case has been properly removed, or if the federal court dismisses the cause of action in response to a party's motions, then the removal operates to terminate the state court's jurisdiction.  Any proceedings that occur in the state  court between the filing of a copy of the federal removal petition in the state court and the reinvestment of jurisdiction that occurs upon the remand of the case to the state court are void." which was done in this case.  See David A. Furlow, et al., ***Removal and Remand: When Does a Federal District Court Lose Jurisdiction over a Case Remanded to State Court***, 41 Sw L.J. 999 (1987)    as an authoritative  dissertation on same which can be found at http://scholar.smu.edu/cgi/viewcontent.cgi?article=2695&context=smulr

[41] George W. Williams had been granted a "Life Estate" by way of a Qualified Personal Residence Trust  under Federal Law that was also filed that he abandoned.

9. In LASC BP070275  upon "further orders" the State Court on September 23, 2003 granted an 11 USC 522(f) motion in whole, of which the prayer of same which simply read:

**THEREFORE PETITIONER PRAYS FOR AN ORDER**

Commanding the County Recorder to Expunge and Remove document image 02-1884046 Judicial Lien discharged in Bankruptcy as ordered by the California Court of Appeals and relevant Federal Law as found at 11 USC 522(f).

which was filed as Los Angeles County Recorder image 03-2952410  as "Restoration of Clear Title" so that all had notice the issue as to title was decided as returned to debtor – this plaintiff who then properly granted it to Roy Union that was on file before the filing of **Exhibit S** on August 31, 2007.

3.92 Further, there is a "tenth way" the order is void ***ab initio*** as the court was "self-stripped" of jurisdiction by the Petitioner John D. Williams as the court without jurisdiction[42] to grant a conservatorship to John D. Williams as he was in an active and acrimonious bankruptcy proceeding which had been going on for approximately ten years[43], and not disclosed to the court in the

---

[42] No cases could be found of allowing a Conservator position to be granted to a person in active Bankruptcy as it appears by Probate 2650(h) is actually prohibited.

[43] As revealed by Dare Law, (SB #155714) a DOJ Attorney of the Office of the US Trustee at Ofc US Trustee, 915 Wilshire Blvd Ste 1850, Los Angeles, CA 90017, Phone Number:(213) 894-4925, Fax Number:(213) 894-2603, when plaintiff filed for protection from the creditor by filing a chapter 11 case, because she knew of the Conservators' Bankruptcy as it was "infamous" in the US Trustee office.

Petition and / or Complaint for Restitution

proceeding as the California Probate Code at 2650(h) reads:

A guardian or conservator may be removed for any of the following causes: . . .

   (h) In the case of a guardian of the estate or a conservator of the estate, insolvency or bankruptcy of the guardian or conservator.

and also reads at California Probate Code 2655 as thus

(a) A guardian or conservator may be removed from office if the guardian or conservator is found in contempt for disobeying an order of the court.

(b) Notwithstanding any other provision of this article, a guardian or conservator may be removed from office under subdivision (a) by a court order reciting the facts and without further showing or notice.

3.93   There is one more "eleventh" way the state court had no jurisdiction and that is once Federal Taxes are filed as a Form IRS 706 upon an irrevocable trust due the death of a grantor, the terms of the trusts become final, and cannot as a rule be changed if the trusts involves operates as an A-B trust, which is a trust that divides into two upon the death of the first spouse. It is formed with each spouse placing assets in the trust and naming as the final beneficiary any suitable person except the other spouse. It can also be two identical trusts for each spouse that do the same and name one spouse as the initial trustee of both trusts.[44] Thus federal law pre-empts state law in that a

---

[44] June and George Williams – who were not lawfully married - had initial estate planning of identical Wills created in 1994 following the death June's only child, before plaintiff met or knew anything of the family, naming plaintiff;s then wife the

QPRT is a Federal Trust the interests of which cannot be adjudicated upon and revoked by a State Court.  See e.g. In re: Robert Ferrante, CC-14-1222-KiTaPa CC-14-1223-KiTaPa (Related Appeals) (9th Cir. BAP 2015)[45]

3.94    The **Wagner** court went on to more accurately define "conceal" broadly:

> "For example, in *Thayer,* the Third Circuit upheld a jury instruction in a § 152(1) case which read:

> Fraudulently concealing property of the estate of the debtor may include ***transferring property to a third party***, destroying the property, withholding knowledge concerning the existence or whereabouts of property, or *knowingly doing anything else by which the person acts to hinder, delay or defraud any of the creditors.*

> 201 F.3d at 224 (emphasis added). Similarly, in *United States v. Turner,* 725 F.2d 1154 (8th Cir.1984), the court adopted a comparably broad standard. It upheld the following jury instruction:

> Concealment means, not only secreting, falsifying and mutilating

estate executor and primary beneficiary to now receivie the home, a verbally see to whoever's healthcare (in which June assumed she would out-live George) which incorporated  a desire to form a Trust from the Will upon the death of one or the other, but when brought to their attention that  was NOT a inter-vivos Trust where a trustee can keep the affairs of the estate  out of a Probate Court, and that the Attorney had set this up to operate to pay himself statutory estate fees upon one or the other's death, they created true identical inter vivos  trusts and attached the Wills as Amendments to the trusts to the death of the Grantors section.

[45] NON-PUBLISHED OPINION explaining the nature of QPRT and its nature found at https://www.courtlistener.com/opinion/2831235/in-re-robert-ferrante/

as specified in section 1 of the Bankruptcy Act but also includes preventing discovery, ***fraudulently transferring*** or withholding knowledge or information required by law to be made known."
[bold and italics emphasis added]

3.95   The type of title policy – as to the lender or homeowner is not known, but it matters not as absent the title policy which insures the "property" title no lender would have loaned money on the fraudulent title and thus it is defined as "concealment" as "withholding knowledge or information required by law to be made known" and notice of claim can be sent directly to the insurer.

3.96   In a diversity action involving the interpretation of an insurance contract California insurance law controls. See Conestoga Servs. v. Executive Risk Indem., 312 F.3d 976, 980-81 (9th Cir. 2002). When applying California law, a federal court must apply the law as it believes the California Supreme Court would apply it. Gravquick A/S v. Trimble Navigation Int'l Ltd., 323 F.3d 1219, 1222 (9th Cir. 2003). When the California Supreme Court has not decided an issue, a federal court must use "intermediate appellate court decisions, statutes and decisions from other jurisdictions" to predict how the California Supreme Court would decide the issue. Id. "Insurance policies are contracts and therefore subject to the rules of construction governing contracts." Safeco Ins. Co. of America v. Robert S., 26 Cal. 4th 758, 762, 110 Cal. Rptr. 2d 844, 28 P.3d 889 (Cal. 2001). The fundamental goal of contractual interpretation is to give effect to the mutual intentions of the parties at the time of contracting. CAL. CIV. CODE § 1636; Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co., 5 Cal. 4th 854, 867, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (Cal. 1993). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." AIU Ins. Co. v. Superior Court, 51 Cal. 3d 807, 822, 274 Cal. Rptr. 820, 799 P.2d 1253 (Cal.

Ct. App. 1990) (citing CAL. CIV. CODE § 1639). "The clear and explicit meaning of words of a contract, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation." Bay Cities, 5 Cal. 4th at 867; CAL. CIV. CODE §§ 1638, 1644; see also Stanford Ranch Inc. v. Maryland Cas. Co., 89 F.3d 618, 626 (9th Cir. 1996) (words of the policy are to be interpreted according to the plain meaning which a layperson would ordinarily attach to them). "If contractual language is clear and explicit, it governs." Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1264, 10 Cal. Rptr. 2d 538, 833 P.2d 545 (1992). "The initial question of whether an ambiguity exists is a question of law." Benach v. County of Los Angeles, 149 Cal. App. 4th 836, 847, 57 Cal. Rptr. 3d 363 (Cal. Ct. App. 2007); Airborne Freight Corp. v. McPherson, 427 F.2d 1283, 1285 (9th Cir. 1970). A policy provision is ambiguous when it is susceptible to two or more reasonable constructions. See Waller v. Truck Ins. Exchange, Inc. (1995) 11 Cal.4th 1 at 18 Language in an insurance policy "cannot be found to be ambiguous in the abstract." Id. (internal citation omitted). "The proper question is whether the word is ambiguous in the context of this policy and the circumstances of this case. The provision will shift between clarity and ambiguity with changes in the event at hand."

3.97  In ***Kenny v. Safeco Title Ins. Co***., 169 Cal.Rptr. 808,. 810 (**Cal**. **App**. 3d 1980) sellers of a property knew a tax lien would exist upon a property they were selling and failed to disclose or pay it, and when the title company received a claim from the current owner and paid it – they then pursued the previous owners as the sellers to recover claiming the sellers knew the lien existed and sold the property with the lien when they had agreed to convey the property free of all encumbrances; and claimed they were third party

beneficiaries when the title company paid the lien, and the court of appeals disagreed reasoning that they knew the lien was there and the title insurance policy was not created to benefit the "seller" when selling property for a title defect they "knew" existed.

3.98    At the time Title365 appeared to defend in LASC BC602232, it certainly then at that time knew the title which it insured was void, as:

> ". . . the duty of an insurer to defend depends upon the facts known to the insurer at the inception of the third party's suit against its insured. "An insurer ... bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." (Gray v. Zurich Insurance Co., supra, 65 Cal. 2d 263 at pp. 276-277, italics added; see State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co. (1970) 9 Cal. App. 3d 508, 526 [88 Cal. Rptr. 246].) The ultimate question is whether the facts alleged fairly apprise the insurer that plaintiff is suing the insured upon an occurrence which, if his allegations are true, gives rise to liability of the insurer to the insured under the terms of the policy. (Gray v. Zurich Insurance Co., supra, 65 Cal.2d at pp. 275-276, fn. 15.) Thus the insurer's obligation to defend is measured by the terms of the insurance policy, and the allegations of the **[83 Cal. App. 3d 29]** complaint in the action against the insured. (Lamb v. Belt Casualty Co. (1935) 3 Cal. App. 2d 624, 630 [40 P.2d 311].)"

citing from Walters v. Marler, 83 Cal. App. 3d 1, 147 Cal. Rptr. 655 (1978)

3.99    As in **_Kenny_** and as well as in Ticor Title v Reed (**Exhibit X**) here we have fraud in the conveyance of the real property, as with Los Angeles County Recorder image 20072032614, (**Exhibit S**) which in part reads: **This Deed is being recorded pursuant to the Los Angeles Superior Court Order #BP070275 dated August 08, 2002, and Recorded August 12, 2002, as

Instrument No. #02-1884046.**; which is an order and judicial lien voided by the US Bankruptcy court in LA02-37195ER on November 20, 2002 and upon the "further orders" allowed resulted in Los Angeles County Recorder image 03-2952410 which AGAIN followed the Bankruptcy court order vacating and voiding the orders that the forged title transfer relies; and further as  Sparks and Burgess were no longer owners – the document is also a post facto insert. This scenario is no different than Ticor Title v Reed – actually then a forged title transfer as now Title365 knew by the prior litigation of LASC BC602232 the title was *defacto* void  as a fraudulent and forged transfer using a null and void appearance power of a court as a fraud upon the court and contempt of the court orders above of November 20, 2002 and September 23, 2003.

3.100 In California one who "aids in the concealment" of stolen property is one who is just as guilty as the thief themselves even though the two are different in the eyes of the law.

> "As amended in 1972 and 1976, the California statute is an example of the broad scope of proscribed conduct, providing in section 496, subdivision 1 in relevant part: "Every person who buys or receives any property which has been stolen or which has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds or aids in concealing, selling, or withholding any such property from the owner, knowing the property to be so stolen or obtained, is punishable by imprisonment in a state prison, or in a county jail for not more than one year; ...."" from People v Boyce,[46] 110 Cal. App. 3d 727 (1980),

---

[46] Available online at https://law.justia.com/cases/california/court-of-appeal/3d/110/726.html

Petition and / or Complaint for Restitution

3.101 In People v Boyce, the court was clear "Where the evidence is clear and uncontroverted, the court may determine as a matter of law whether a witness is an accomplice, but where there are disputed facts or conflicting inferences, this question must be left to the jury to decide. (See People v. Hoover (1974) 12 Cal. 3d 875, 880 [117 Cal. Rptr. 672, 528 P.2d 760].)" but here the defendant has been made clear that the title is fraudulently crafted and is essence a forgery using a void order to which they remain silent.

3.102 But see Salazar v. Nationwide Mut. Ins. Co., 119 F.3d 6, 1997 WL 410530, at *1 (9th Cir. 1997) (applying California law) ("an injured third-party has standing to bring a breach of contract action directly against an insurance company, if she can show that she is an intended beneficiary or a member of a class of persons that the insurance contract expressly intended to benefit. See Cal.Civ.Code § 1559 (1997); Jones v. Aetna Cas. & Sur. Co., 33 Cal.Rptr.2d 291, 295 (1994)").

3.103 Here it is commonly done in title policies to pay the third party beneficiary claimant when it becomes "reasonably clear" according to California law that a liability exists and this is determination is directed to occur no later than in 40 days according to 10 CCR § 2695.7(b) "Upon receiving proof of claim, every insurer, except as specified in subsection 2695.7(b)(4) . . . , shall immediately, *but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part.* The amounts accepted or denied shall be clearly documented in the claim file unless the claim has been denied in its entirety." [bold and italics emphasis added] **Exhibit V** shows documentation sent to Title365 upon which they ignored and remained silent

3.104 Here however plaintiff is an intended third-party beneficiary as the previous

lawful owner   who granted a Warranty Deed to transfer the property to another whereas the distinction between a lender's title policy and a borrower's title policy is well-recognized. The purpose of such a distinction is apparent when circumstances arise, in which the title insurer must settle claims due a defective (or defects in)  title  under the insurance policy and then pursues the tort-feasor for fraudulently representing title. (in this case those who fraudulently crafted the title based on a void order they knew was void)  See Chicago Title Ins. Co. v. Seko Investment, Inc.[47] (In Re Seko Investment, Inc.), 156 F.3d 1005, 1007 (9th Cir. 1998).  [ pursuit justified as insured obtained the policy fraudulently by doctoring the title ]

3.105 Now in this case; Title365 by ignoring the claim of plaintiff has placed itself however squarely into the position of a bad-faith tort feasor itself which is defined by 18 USC 152(8) and 18 USC 157(3) as criminal conduct because the property they are "aiding in the concealment" of the true ownership of is by law defined as receiving, withholding and insuring as stolen property by contempt of the court orders they know exist is in a Bankruptcy context.

## 100 percent Bankruptcy Estate Property

3.106 The creditor, Conservatorship of Williams, obtained a ***void ab initio*** combination money judgment and "quiet title like" void ab initio  by 28 USC 1446(d) order in which the Probate court in LASC BP070275 further lacked jurisdiction to adjudicate under Probate 21350 and Probate 2520 by the wording of the order itself against a trust and/or enter personally against

---

[47] Found at https://www.courtlistener.com/opinion/758105/in-re-seko-investment-inc-a-nevada-corporation-debtor-chicago-title/

Petition and / or Complaint for Restitution

trustees as in California Probate Courts cannot issue "money judgments"; as by California Code, Probate Code - PROB § 15305.5 and 15311, they can only issue a "restitution judgment" upon another order issued properly under if petitioned to the court under California Code of Civil Procedure § 709.010[48] which requires a full [new case number] large claims civil action be filed which in this case would have to be a Probate 17200 petition to gain jurisdiction over the affairs of a trust which was NOT done and of course Probate 2520 was a repealed law- giving the court thus no jurisdiction at all a Probate Court can only issue "surcharge" orders as its jurisdiction  is one solely "in rem" and not "in personam".  See Estate of Hensel, 144 Cal. App. 2d 429 (Cal. Ct. App. 1956)[49] and Estate of Fain 75 Cal. App. 4th 973, 89 Cal. Rptr. 2d 618  (1999)[50]

3.107 A Federal Removal can be effected at any time before final judgment is entered, and in some cases even AFTER judgment where due process or other  Federal law might preempt state law, and when the Removal was filed and perfected by serving upon the State Court and parties, during the period of Removal before Remand the court signed the proposed order of the creditor which did not comply with State and law and that then by that act produced a void ab initio order by that act.

3.108  In the Removal petition plaintiff plead violations of federal law of rights of

---

[48] See California Trust Administration, 2d.: 2017 Update, §10A.18 edited by Robert Denham,  by California  Continuing Education of the Bar (CEB)
[49] Found at https://www.courtlistener.com/opinion/1355082/estate-of-hensel/
[50] Found at  https://www.courtlistener.com/opinion/2300736/in-re-estate-of-fain/?fa=home.notice&page=765

Petition and / or Complaint for Restitution

due process and but the district court transferred the case to Judge Pregerson who was still angry for the reversal of him by this plaintiff as a pro se litigant in 02-1043DDP and thus declared that plaintiff and his then wife were not "defendants" and the case was "improperly removed", sua sponte; when the reality was the very due process claims plead were the reasons plaintiff and his then wife were not defendants – because California Code of Civil Procedure 709.010 was not complied with to file a true large claims action in personam against them as should have been done.  See e.g. Labertew v. Langemeier, 846 F. 3d 1028 - Court of Appeals, 9th Circuit 2017[51] [addressing that only a civil action may be removed to Federal court – thus due the failure of creditor to properly file a full civil action as required by law due process was violated in this case]

### A Judgment exists to identify Criminal Conduct

3.109 In *Labertew*, the 9th Circuit has now made clear that Judge Pregerson was in error for his reason to *sua sponte* rule upon the case, as it WAS a "civil action", but regardless today the resulting LASC BP070275 order of September 23, 2003 that resulted in Los Angeles County Recorder image 03-2952410 is in effect a "judgment"[52] under Federal Rules of Civil Procedure

---

[51] Found at

https://scholar.google.com/scholar_case?case=15195908378917315557&hl=en&as_sdt=6&as_vis=1&oi=scholarr OR

https://cdn.ca9.uscourts.gov/datastore/opinions/2017/01/20/14-15879.pdf

[52] See also **IN RE ISAACS,** 569 B.R. 135 (2017) [citing In re Bruel, found at https://www.leagle.com/decision/inbco20170703560 ], which discusses how the Rooker-Feldman doctrine would in this case affect any challenge to the September

69 which may be considered to enforce as a foreign judgment against anyone who violates it in a Bankruptcy crime context . The **Labertew** panel wrote:

> Ordinarily a court enforces its own judgments. Garnishments from other courts are ordinarily turned into judgments of a new court by separate actions for debt on a judgment,[21] registration,[22] or even mere filing of an authenticated copy.[23] But the judgments are not executed upon in courts that did not issue them.

> [In a true internet enabled PDF version the footnotes 21, 22 and 23 above will carry the reader to the links thereof in the cited case otherwise locally below see for 21[53], 22[54] and 23[55]

3.110 As the law is what it is, and the act of signing the **void ab initio proposed order** by the state court  while under removal jurisdiction was a null and void

---

23, 2003 judgment of the State court, also Los Angeles Country Recorder image "of restoration of clear title which is containing the judicial release motion  03-2952410

[53] *See e.g.,* Benjamin J. Shipman, Common-Law Pleading 266 (3d ed. 1923).

[54] 28 U.S.C. § 1963 ("A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. Such a judgment entered in favor of the United States may be so registered any time after judgment is entered. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.").

[55] *See e.g.,* Ariz. Rev. Stat. § 12-1702.

act defined by law itself, and then actually forced the filing of Bankruptcy for protection under the Bankruptcy code, and the *Labertew* panel once again reiterated the intricacies of what happens automatically when a Removal Petition is *simply filed* and shows in detail by the ruling of the court what actually happens to both parties and the proceedings that State law is supplanted by Federal law and until and if remanded controls then forward

3.111  The Bankruptcy trustee, Leonard Brown took one look at the August 8, 2002 order, chuckled, flashed his eyebrows and said "I am not going to try to collect on a money judgment issued by a Probate Court and also because this order is not final and because of what you did in the Removal effort now also has a lot of other problems"  See again **Exhibit W**

3.112  The *Rooker-Feldman* doctrine per *Issacs* in the footnote prior cannot apply to plaintiff as he is seeking to enforce, not avoid a state court judgment

3.113  From that point on technically the Conservatorship of Williams *itself* actually had no lawful force and effect and the August 8, 2002 order was never replaced with an actual signed order of same reciting proper jurisdiction after the removal effect under 28 USC 1446(d) voided it, and the Bankruptcy Trustee Leonard Brown recognized this, though it took plaintiff 20 years to find case law and see what in essence really had gone on in his Bankruptcy.

3.114  On November 19, 2002 plaintiff petitioned the Bankruptcy court in LA02-37195ER for relief citing 28 USC 1446(d); the violation of the automatic stay and *Hilao v. Estate Of Marcos* 95 F.3d 848 (1996)[56] that state law had not

---

[56] Found at  https://www.leagle.com/decision/199694395f3d8481817

been complied with (assuming it could be from the way the order was drafted[57]) and the Bankruptcy court at the same time reviewing the motion for relief from stay, voided the post petition efforts to collect voiding both the writ of execution and the order of August 8, 2002, and but also allowing the creditor to return to state court for "further orders"; but did not specify nor direct the limits that the Bankruptcy code automatically imposed as to the protected liability of the debtor, and still and yet the result was the State Court granted an 11 USC 522(f) lien avoidance in addition to following the orders of the Bankruptcy court which resulted in the filing of Los Angeles County Recorder image 03-2952410 as a "Restoration of Clear Title" to plaintiff.

3.115 By 11 USC 541, plaintiff thus had all actual legal interests in all the property as scheduled and all further acts by Conservatorship of Williams were operating in a fraud upon the courts by Federal Law using a void ab initio order for all acts against the property of plaintiff, but additionally the Bankruptcy court had also voided the order on November 20, 2002 also. See *In re: George D. Newpower,* 233 F.3d 922 (6th Cir. 2000)[58] [all items of proper legal and equitable title are assets of the Bankruptcy estate ]

3.116 What qualifies as a property interest is determined by reference to state law, unless some federal interest requires a different result. Butner v. United States, **440 U.S. 48**, 54-55 (1979), but here, a lawfully granted IRS Qualified

---

[57] An order cannot BOTH be a money judgment and a quiet title directive to allow the clerk to substitute a signature to transfer title where no quiet title jurisdiction was ever pled

[58] Found at  https://openjurist.org/233/f3d/922/in-re-george-d-newpower-jr

Personal Residence Trust had been granted, recorded and also abandoned.[59]

3.117 Residence trusts in the United States are used to transfer a grantor's residence out of the grantor's estate at a low gift tax value. Once the trust is funded with the grantor's residence, the residence and any future appreciation of the residence are excluded from the grantor's estate, if the grantor survives the term of the trust. ***Personal residence trusts ("PRTs") are irrevocable split interest trusts.*** The transfer of the residence to the trust constitutes a completed gift. The split interest character of the trust is as follows: the grantor retains the right to live in the house for a number of years, rent free, and then the remainder beneficiaries of the trust become fully vested in their interest. PRTs are similar by nature to other types of retained interest trusts, like GRITs, GRATs and GRUTs. Generally, if the grantor retains an interest in the trust, then for estate and gift tax valuation purposes, his retained interest is valued at zero. However, if the retained interest is "qualified" within the meaning of United States Internal Revenue Code ("Code") section 2702(b), its value is determined under Code Section 7520, thus the State court also lacked jurisdiction "revoke" an "irrevocable" intervivos trust[60] which allowed a Federal QPRT that was lawfully granted and filed.

3.118 Filing for the Conservatorship itself was a fraud upon the court.

The Standard of Proof for a Conservatorship is as follows:

---

[59] See **Exhibit N** which shows the distribution under the terms of the trust of 50% share to Karen Sparks by plaintiff and notice of QPRT abandonment per IRS code as required, acting as the sole trustee who was holding the 1715 property in trust.

[60] Pursuant to California Probate 15403(b) the State court also lacked jurisdiction

o Clear and Convincing Evidence is required, "so clear as to leave no substantial doubt"

o Presumption is that proposed Conservatee has capacity. (Probate Code §810 (a))

o **Must Be Last Resort – Probate Code §1821(a)(3):** Petitioner must inform court of alternatives to conservatorship and why the alternatives will not work. [bold emphasis added]

The Conservatorship is needed when a personal cannot care of themselves or when they can not handle their own financial affairs, but if a trust exists and was created for this purpose the last resort test fails stripping a court of jurisdiction to adjudicate a Conservatorship of the Estate, but one of the person is allowable by the Conservatee's wishes and is paid a sum for support to the Conservator of the person.  See Cal Probate 15404 to 15407

3.119  Still creditor Williams even with a void order, by 28 USC 1446(d) and the Bankruptcy court, did not stop and pursued collection to eviction and then realized they had no way to gain legal title again so they used the voided order to "doctor up a title" to transfer.  See footnote 36 infra, ***In re Seko***

3.120  The Sixth Circuit Court of Appeals has explained that "what the *Rooker-Feldman* doctrine primarily bars are claims that seek `relief from injury "caused by" the state court judgment.'" *Hamilton v. Herr* (*In re Hamilton*), 540 F.3d 367, 372 (6th Cir. 2008) (quoting 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4469.1 at 11 (2d ed. Supp. 2008)).  It is plaintiff's contention that as the Sixth Circuit Court of Appeals agreed with the district court, holding that, while state courts have jurisdiction to *construe* a bankruptcy court's discharge order, they do not have jurisdiction to do so incorrectly and

thereby *modify* a discharge order. *Hamilton,* 540 F.3d at 375.

3.121 The State Court on September 23, 2003 construed the plaintiff's discharge order to include the right to an 11 USC 522(f) lien avoidance was proper and agreed the August 8, 2002 order was void under 28 USC 1446(d) anyway

3.122 When this was made clear to defendant in a claim, they ignored the plaintiff.

3.123 Finally in 2017 the California court of Appeals addressed such a scenario similar in *OC Interior Services* which provided a clear actionable precedential purview with which to file a direct action against Title365.

**DIRECT ACTION  AVAILABLE AS THIRD PARTY BENEFICIARY**

3.124 In LASC BC602232, plaintiff named Title365 as a defendant, but that suit was defective in that the required previous notice of claim as a third party beneficiary claimant had not been sent to Title365 needed to establish any bad faith issues and that suit was ultimately dismissed by plaintiff without prejudice so the defects of that suit could be cured and the action properly brought, but in *Barnes v. Western Heritage Insurance Co.,* 217 Cal.App.4th 249 , 2013 Cal. App. LEXIS 480 (June 18, 2013) the court cited *Superior Dispatch, Inc. v. Insurance Corp. Of New York*, 181 Cal.App.4th 175 (2010)[61] stating "The insurer need not intend to deceive the insured to be subject to equitable estoppel. (Superior Dispatch, Inc., supra, 181 Cal.App.4th at p. 187.) Rather, estoppel may be predicated on the insurer's

---

[61] Found at  https://www.courtlistener.com/opinion/2246709/superior-dispatch-inc-v-insurance-corp-of-new-york/

Petition and / or Complaint for Restitution

failure to speak when it is bound to do so. (City of Hollister v. Monterey Ins. Co. (2008) 165 Cal.App.4th 455, 488.)" [citing to 2695.1–2695.17)  Sections 2695.4(a)  and  2695.7(f)  which  are  part  of  the  Fair  Claims  Settlement Practices Regulations (Cal.Code Regs., tit. 10, §§ ]

3.125 When the LASC BC602232 court at the hand of a female Judge who was also a hand-picked  advisory council member to the California Supreme Court by the female Chief Judge of the California Supreme Court   indicated it was heading into "color of law" land,[62] plaintiff amended the State complaint to a

---

[62] Though California State Law firmly strips jurisdiction for a court to hear a  late filed "demurrer" (the equivalent of a Rule 12(b)(6) motion),  the court over-ruled plaintiff's objections and was going to hear the late filed and inapposite demurrer anyway and though state law actually does not allow "demurrers" nor "default judgments" in quiet title cases, and required instead the court to immediately hold a hearing to address the issues of the documentation filed in regard the "title" it was clear she could not go down that road as it would direct the court to rule in favor of plaintiff.  The procedure in California to hear a quiet title case is to comply with the letter of the statute as in *Harbour Vista, LLC v. HSBC Mortgage Services Inc., 201 Cal. App. 4th 1496 - Cal: Court of Appeal, 4th Appellate Dist., 3rd Div. 2011* the court wrote clearly "After examining the relevant statutes, we conclude the court did not have the authority to enter a default judgment in this situation. In addition, we conclude the statute obligated the court to hold an evidentiary hearing in open court before it adjudicated title, a hearing in which both HSBC and Harbour Vista could participate. We therefore remand the case to the trial court to conduct this hearing."; and in *Nickell v. Matlock*, 206 Cal.App.4th 934, 142 Cal.Rptr.3d 362 (2012) that it became further clear "We should [must] give effect and significance to every word and phrase of a statute." (*Garcia v.McCutchen* (1997) 16 Cal.4th 469, 476.) means a court MUST STAY a case where the 872.050(c) states "shall" STAY strips the

Petition and / or Complaint for Restitution

42 USC 1983 complaint in the state court and filed in essence the same action in the US District Court for Nevada where the defendant cooperation "RBEY" in that case was found where plaintiff was then going to use the state court clear title judgment, inter alia, to seek collect on it there to force a payout by the title company and then also removed LASC BC602232 based on 28 USC 1452 – bankruptcy removal – into that case in the District of Nevada, which was numbered as 2_16_cv_00625-_JAD_GWF which confused the controversial then freshman Judge there Jennifer Dorsey.[63]

3.126 The female Chief Judge in the Nevada court was already playing games, as she had allowed or ordered the case filed, with a case number but apparently had instructed the clerk not to issue the summonses, and it took a physical trip to Nevada to discover that though the case was filed, and the clerk was accepting filings into it, no Informa Pauperis Ruling had been granted so they considered the case was not "active" to allow the issuance of summonses,

---

court of jurisdiction until that command is complied with.   The State court was having none of that though advised of same in pleadings.  See California Code of Civil Procedure 764.010, as cited directly in *Harbour Vista.*

[63] Judge Dorsey was a controversial appointment as she had never been a Judge anywhere before and there was a coinciding campaign contribution of $150,000  as Dorsey was being vetted by Reid for the job in spring 2012, two senior partners at her Las Vegas law firm, Kemp, Jones & Coulthard, gave $150,000 to the Senate Majority PAC, a Reid-linked organization run by former advisers to elect Democrats to the U.S. Senate. Dorsey's name was advanced to the White House a month later. She won appointment by a 54-41 vote of a Democratic controlled Senate.  See  https://www.reviewjournal.com/crime/courts/dorsey-survives-whiff-of-scandal-to-become-federal-judge-in-nevada/   (or search Dorsey scandal online)

Petition and / or Complaint for Restitution

and thus when the removal petition was filed into that case number and law was compiled with under 28 USC 1452 *which allows a plaintiff also to remove a bankruptcy related matter*, the Federal rules were then driving the case and when the defendants went into default once again – and default judgment was applied for, then the defendants both made appearances by again female attorneys and  then Judge Dorsey ruled on the case, first denying the IFP, then proceeding to dismiss the action declaring the removal was improper, and yet did not remand the case.

3.127 The plaintiff then *dismissed the State Court LASC BC 602232 action without prejudice* as it was due the amended complaint in essence no longer a quiet title action but instead a 42 USC 1983 action the State Court technically had no jurisdiction over due the judgment at its root was based on a Bankruptcy discharge even though the State court had issued the final proper order under that grant of 11 USC 524 of an 11 USC 522(f) lien avoidance returning the real property to Debtor – this plaintiff.

3.128 The Nevada Federal Court thus dismissed the 42 USC 1983 action, but did not and could not address the State Judgment of September 23, 2003 which was final and is Los Angeles County Recorder image 03-2952410, as thus the issue was there in that case WHO would have paid the judgment restitution by compensation – not the state court judgment itself.  An appeal filed to the Ninth Circuit went into a "black hole" case and was never acted upon or scheduled for briefing one way or the other.  See now as clarified by the Ninth Circuit  why the Nevada court could not, and did not affect the state court property judgment as reasoned in the *Labertew* case cited herein.

3.129 Nothing precludes the enforcement of the State Judgment of September 23,

2003 which was and is final and is Los Angeles County Recorder image 03-2952410 directly as a third party claimant against Title365 Company though they were named in the LASC BC 602232 State Quiet Title and Federal 42 USC 1983 action also.   See Barnes v. Western Heritage Ins. Co., 217 Cal.App.4th 249 (June 18, 2013)  [collateral estoppel does not bar the present action because the issues asserted in this action were not litigated or determined in the prior . . .  action;]

3.130  Now upon this filing plaintiff has made the requisite  notice of claim filing with Title365 that they have ignored but to acknowledge initial receipt.  See **Exhibit V** and Title 365 responded upon command of the Insurance Commissioner of the State of California affirming their criminal conduct.

3.131  In United States v. M Connery, 867 F. 2d 929, (6th Circuit Feb. 10, 1989) in reversing the District court's jury nullification order of a criminal conviction, the Court of Appeals was clear that "aiding and abetting"  as 18 USC 152 defines it is the law that applies to even support counsel and companies.

3.132  Certainly it appears there was and is now actionable bad faith behaviors by Defendant as well as fraud in and by the courts where clear law for some reason cannot and will not be followed and refuses to be addressed to dispel the plaintiff's claims – as it appears none can dispel the claims.

## IV.   FIRST CAUSE OF ACTION
## BREACH OF CONTRACT - BAD FAITH CONCEALMENT OF PROPER LEGAL TITLE OWNER AND REFUSUAL TO INVESTIGATE CLAIM
## [CRIMINAL CONCEALMENT OF PROPERTY]

**(Violation of 18 USC 152(8) and 157(3) established by documentation)**

4.1   Plaintiff incorporates paragraphs 1-3.132 herein.

4.2   Title365  Company entered in an agreement as the title insurer showing Title Order 310-18188-35 and Escrow Number 02-021439-LD which assures that no title defects exist in regards the referenced property.

4.3   The consideration set forth in the agreement was the fair and reasonable.

4.4   Plaintiff as a third party beneficiary as the prior title holder is entitled to all the conditions, covenants, and promises to compensate from the defects in title and required by him to make a formal claim first to Title 365 Company on his part to be performed in accordance with the terms and conditions of the contract and California Law as found at 10 Cal Code Regs §2695.2.

*4.5*   On March 5, 2018 in response to a directive of the California Department of Insurance due title 365's failure to respond to plaintiff in the time required by law and to answer plaintiffs claim, Defendant took and takes the position set forth in **Exhibit Y** to the claim set forth by **Exhibit V** which ignores the issue that 28 USC 1446(d) finds the August 8, 2002 order upon which they rely, is and was at all times, ***void ab initio*** and then takes the fraudulent position that while the Bankruptcy court did on November 20, 2002 void Los Angeles County Recorder image 02-1884046, and the State Court voided same on September 23, 2003 due in part both prayers in motions to those courts  that 28 USC 1446(d) had caused the August 8, 2002 order to be ***void ab initio*** by Federal law, that somehow the order remained valid in contradiction to  28 USC 1446(d) to seize Bankruptcy Estate property.

Petition and / or Complaint for Restitution

4.6    When it became "reasonably clear" defendants had insured a void title defendants failed and neglected to communicate any further to explain their position or deny the claim formally within the time period allotted by law

4.7    Defendant Title 365 Company was made more than clear there was Bankruptcy involved and knew and should have know that Title 18 of the US Code thus applied to the property and they thus concealed this fact.

4.8    In the Third Circuit, the definition of "concealment" is found in the ruling of United States *v.* William H. Thayer, 201 F.3d 214 (3rd Cir. 1999), (***Thayer***) citing both ***Wagner*** and ***Turner***, *infra* , the panel adopted the definition that as the [***Turner***] "court explained that an act was fraudulent if done as part of an attempt to conceal the debtor's assets. We hold the District Court properly instructed the jury that Thayer could be convicted only if he transferred MIS\ assets with the intent to conceal them. See United States v. Turner, 725 F.2d 1154, 1157 (8th Cir. 1984) (approving of jury instructions defining "concealment" for purposes of S 152 to include "not only secreting, falsifying and mutilating... but also... preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made known")."

4.9    Despite the presence of **Exhibit Q** and **Exhibit S** in the County Recorder Images, Defendant Title365  Company issued a title insurance policy **on Title Order 310-18188-35 and Escrow Number 02-021439-**

4.10   When apprised this Title was fraudulently created using a void order, defendant Title365 Company in contravention of law for over 40 days did

not answer the notice of claim of plaintiff or address the issue as required by law to admit or deny the claim with an explanation to law as to why.

4.11   In LASC BC602232, the complaint made clear that the title was subject to

1.      a bankruptcy proceeding that existed relating to the title;

2.      the defendant concealed and ignored that the title was not clear and marketable, thus in the chain of title destroyed, or mutilated the documents;

3.      such documents related to the property or financial affairs of the debtor; and

4.      the defendant acted knowingly and fraudulently to their benefit to collect a title insurance fee on stolen property not insurable;

and these are the four prongs to prove a violation of 18 USC 152

4.12   The act of concealing, destroying or falsifying records can occur either before or after the bankruptcy case is filed. Documents or information relating to the financial affairs of a debtor include anything that would provide the names and locations of possible sources of funds or assets or means of reorganization of the estate. *United States v. Roberts*, 783 F.2d 767 (9th Cir. 1985); *United States v. Metheany*, 390 F.2d 559 (9th Cir.), *cert. denied*, 393 U.S. 824 (1968).

4.13   An entry that accurately logs a fraudulent transaction is a "fraudulent entry" when the party making the entry is aware of the fraudulent nature of the transaction. *United States v. Center*, 853 F.2d 568, 571 (7th Cir. 1988). A credit placed on a company's books as a fabrication to cover up the transfer of an accounts receivable in contemplation of bankruptcy is a false entry in a document relating to property of the bankrupt. *United States v. Falcone*, 544 F.2d 607, 610 (2d Cir. 1976), *cert. denied*, 430 U.S. 916 (1977).

Petition and / or Complaint for Restitution

4.14   In the Third Circuit pursuant to ***Thayer***, concealment is defined as

> The elements are: One, on or about the date alleged in the indictment, the proceeding in bankruptcy was in existence. That's not in dispute.

> Two, the defendant fraudulently concealed the property described in the indictment from creditors in the bankruptcy proceedings.

> And, three, that such property belonged to the estate of the debtor.

> A person fraudulently conceals property of the estate of a debtor when that person knowingly withholds information or property or knowingly acts for the purpose of preventing the discovery of such property, intending to deceive or cheat a creditor, a trustee, or a custodian or a bankruptcy judge.

> Fraudulently concealing property of the estate of the debtor may include transferring property to a third party, destroying the property, withholding knowledge concerning the existence or whereabouts of property, or knowingly doing anything else by which the person acts to hinder, delay or defraud any of the creditors.

> The act of concealment does not depend on the amount or value of the property involved. It is sufficient if a substantial amount of property was knowingly and fraudulently concealed or transferred by the accused as charged in the indictment....

4.15   Defendant Title365  and Swenson have criminally violated 18 USC 152

4.16   No conviction is required, in accord relevant California law shown in accord California Penal Code 496 and Bell v. Feibush , 212 Cal. App. 4th 1041 (2013)

## V. SECOND CAUSE OF ACTION
## (BREACH OF CONTRACT FORMED FOR BENEFIT OF THIRD PARTY)

5.1   Plaintiff incorporates paragraphs 1- 4.16 herein.

5.2   Defendant Title365  Company Inc, by its employees and agents certified it had inspected the files of the Los Angeles County Recorder and accepted the forged substitution placement of a signature at the hand of the clerk at **Exhibit S – image 20072036314**; when **Exhibit Q – image 03-2952410** clearly set for the order the basis of the document was voided by Bankruptcy as to plaintiff and the subject property.

5.3   If it was not clear at the time of issuance of **Title Order 310-18188-35 and Escrow Number 02-021439-** it became and was made clear in LASC BC 602232 that a stolen property had been insured and instead of meeting its duty to pay out on the policy Title365  Company withheld and thus "held" its receipt of the stolen property criminally violating both CA Penal Code 496 and ***Bell v Feibush*** and 18 USC 152 by continuing to cover the "false entry" into the records it, its agents and the purchasers had made.

5.4   A claim demand was to settle to the limits of the policy was sent to Title365 Company shown as **Exhibit V**

Petition and / or Complaint for Restitution

5.5   A response was received shown as **Exhibit Y** but no further investigation could be determined within the allotted 40 days by state law at 10 CCR § 2695.5[64] to have been done so and thus Title365 Company failed to cooperate in discovering the true issue of clear title and thus had admitted that they have insured a void title as stolen property.

## VI.   THIRD CAUSE OF ACTION

## (BREACH OF CONTRACT TORTIOUS INTERFERENCE BY-INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS)

6.1   Plaintiff incorporates paragraphs 1- 5.5 herein.

6.2   In order to prove tortious interference under California law, a plaintiff must be able to prove the following five things before the court:

   A. There was a valid contract between the plaintiff and another party;

   B. The (third party) defendant knew about the existence of that contract;

   C. The defendant intended to disrupt the contract;

   D. The actions of the defendant made contract performance less likely, or altogether impossible; and

   E. The plaintiff sustained real economic harm because of the contract

---

[64] Available at

https://govt.westlaw.com/calregs/Document/IBF8239B0D49211DEBC02831C6D6C108E?viewType=FullText&originationContext=documenttoc&transitionType=CategoryPageItem&contextData=(sc.Default)

1  interference.

2  See Imperial Ice Co. v. Rossier. 18 Cal.2d 33, 112 P.2d 631 (1941)[65] cited

3  as recent as in also Della Penna *v.* Toyota Motor Sales, USA, Inc., 902 P.2d

4  740 (Cal. 1995)[66] [clarify and place standards upon the elements of the tort

5  variously known as interference with "prospective economic advantage,"

6  "prospective contractual relations," or "prospective economic relations,"] and

7  **Della Penna**  therefore cited forward in Korea Supply Co. *v.* Lockheed

8  Martin Corp., 63 P.3d 937 (Cal. 2003)[67] [This case addresses what claims

9  and remedies may be pursued by a plaintiff who alleges a lost business

10  opportunity due to the unfair practices of a competitor.]

12  6.3   All prongs set forth in 6.2 above are met in the aforesaid averment clauses.

## VII.   FOURTH CAUSE OF ACTION
## (BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)

19  7.1    Plaintiff incorporates paragraphs 1- 6.3 herein.

20  7.2   In every contract or agreement there is an implied promise of good faith and

21  fair dealing. This means that each party will not do anything to unfairly

22  interfere with the right of any other party to receive the benefits of the

---

[65] https://www.courtlistener.com/opinion/1380628/imperial-ice-co-v-rossier/

[66] Found at https://www.courtlistener.com/opinion/2607092/della-penna-v-toyota-motor-sales-usa-inc/?q=cites%3A(1380628)

[67] Found at https://www.courtlistener.com/opinion/2630547/korea-supply-co-v-lockheed-martin-corp/?q=cites%3A(2607092)

Petition and / or Complaint for Restitution

contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract. Plaintiff claims that Title 365 Company violated the duty to act fairly and in good faith.

7.3   Plaintiff and Title 365 Company have a contract to assure no defects exist in the title of which they insure.

7.4   That Plaintiff did all, that the contract required to be done under law.

7.5   That all conditions required for Title 365 Company's performance have occurred and were not excused

7.6   That Title 365 Company unfairly interfered with Plaintiff's right to receive the benefits of the contract; and

7.7   That Plaintiff was harmed by Title 365 Company's conduct and continues to suffer from the harm.

## VIII. FIFTH CAUSE OF ACTION
### (VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE 17200 et seq)

8.1   Plaintiff incorporates paragraphs 1- 7.7 herein.

8.2   Section 17200 of the California Business and Professions Code prohibits unfair competition  which includes any unlawful, unfair or fraudulent business acts or practices.

8.3   In the business of Insurance these acts are further defined into categories found at the California Insurance Code at section 790.03(h)

8.4   Defendant engaged in unfair competition and violated 790.03(h)(2),(5) and (12) after becoming aware that a Bankruptcy injunction was in effect that includes but was not limited to as thus:

- (2)   Failing to acknowledge and act reasonably promptly upon

communications with respect to claims arising under insurance policies.

- (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

- (12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

8.5    In California this is defined in the business of title Insurance as withholding and concealing stolen property punishable by California  Penal Code 496 which provides a plaintiff may file a civil action for treble damages and attorneys fees without a criminal conviction being first obtained.  See ***Bell v. Feibush*** , 212 Cal. App. 4th 1041 (2013)

8.6    In accord 18 USC 3663A(c)(1)(A)(ii) a Federal court is mandated to award Restitution in accord any relevant law on the issue which California  Penal Code 496 is as 18 USC 3663A(a) (1) reads: "Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), ***the court shall order***, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate."

8.7    In the case of case of California Penal Code 496 which allows for the filing of a civil action as another "provision of law", "The [a] conviction may be proved by a certified copy of the Judgment and Commitment Order or the equivalent state form."  See  U.S. Attorneys » Resources » U.S. Attorneys' Manual » Criminal Resource Manual » CRM 500-999 » Criminal Resource Manual 601-699  **609. Evidence Of Conviction** paragraph  two found at https://www.justice.gov/usam/criminal-resource-manual-609-evidence-conviction

8.8    To prove violation of 18 USC 152(8) to a court documents attached to

Petition and / or Complaint for Restitution

(available as certified copies if absolutely required) and referenced herein show

8.8.a)  a bankruptcy proceeding existed;
8.8.b)  the defendant concealed, destroyed, or mutilated the documents;
8.8.c)  such documents related to the property or financial affairs of the debtor; and
8.8.d)  the defendant acted knowingly and fraudulently.

8.9   Through the civil provisions of law allowed by California Penal Code 496 and California Business and Professions Code 17200 in accord California Insurance Code 790.03(h) as the ***Wagner*** court defined, defendant has by their reply on March 5,  2018 in refusing to settle with plaintiff who is the actual owner of the property at **Exhibit Y** and to the claim documents describing how and why previous litigation  established same found  in **Exhibit W**  which clearly addresses and shows the issues of the Bankruptcy, and the orders emanating there from defendant has admitted the prongs of 18 USC 152(8) as set forth by the Criminal Resource Manual  at 609

8.10   Defendant has construed well settled law and the relevant orders found in **Exhibit A** in a manner which  "knowingly and fraudulently" violates law.

8.11   See paragraph 3.60 *infra* and Crisci v. Security Ins. Co. of New Haven, 426 P.2d 173 (Cal. 1967) where the  court wrote in part "***Several cases, in considering the liability of the insurer, contain language to the effect that bad faith is the equivalent of dishonesty, fraud, and concealment***."

## CONCLUSION

Title 18 has been violated, and proof of same by documentation has been provided, as there is no escape from Publicly Recorded information, and the

admission of the defendant of March 5, 2018 which indicates the defendant is fully aware of the law on the issue but chooses to fraudulently construe well settled law and Federal and State orders to continue to keep the property. Upon establishment of the prongs of 18 USC 152(8) under 18 USC 3663A(c)(1)(A)(ii) a Federal court is mandated to award Restitution.  See United States *v.* Gary Kovall, 15-50419 (9th Cir. 2017)  [found at https://www.courtlistener.com/opinion/4395341/united-states-v-gary-kovall/ ] [citing to 18 USC 3771(d) for how a court must address requests for Restitution ]  and U.S. v. Freeman  741 F.3d 426 (4th Cir 2014) [ found at https://www.leagle.com/decision/infco20140117064  [ clarifying a victim in a Bankruptcy context ]

18 USC 3663A(c)(1)(A)(ii) is also known as the "MVRA" and in ***Kovall***, the 9th Circuit wrote:

> ""Accordingly, "[w]e've held in some contexts that 'restitution under the MVRA is punishment.' But in other contexts, we've held that it's not. Sometimes we've held it's a hybrid, with 'both compensatory and penal purposes.'" United States v. Green, 722 F.3d 1146, 1150 (9th Cir. 2013) (citations omitted).""

 and this illustrates therefore that  this court has the power to award the treble damages commanded by California Penal Code 496  due the defendants conduct of refusal to settle and in violation to Federal law and Federal orders that govern this case.  While defendant did not initially commit the crime, it was given direct and ample opportunity to payout on the policy and pursue the actual criminal attorney tort-feasors once shown them and how they are.

To be a "crime victim" pursuant to 18 USC § 3771(e)(2)(A) does not require a conviction of the defendant first, but instead the victim may move the court

for Restitution and set forth the elements of the Federal Crime to meet the prongs thereof as with this complaint here.  See  18 USC § 3771(d)(3).

**WHEREFORE, Plaintiff prays for:**

AS TO ALL CAUSES OF ACTION

1.  A finding that the Insurance carrier has acted in bad faith concealing the true owner of the property and that policy limits thus do not apply.

2. A Restitution Judgment that compensates plaintiff as the true owner of 1715 in the amount of treble damages as to the current value of the property in minimum of 4.5 million dollars or greater if the property has appreciated

3. Costs of suit; and

4. Other relief that the Court considers proper.

DATED:  May 5, 2018

Reginald P. Burgess
Plaintiff

Petition and / or Complaint for Restitution

VERIFICATION

I, the undersigned, state:

I am the plaintiff in the above-captioned matter. I have read the foregoing Petition for Restitution and know the contents thereof; the same is true of my own knowledge, except as to those matters which are therein stated upon information and belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of Delaware that the foregoing is true and correct.

Dated:    May 5, 2018

_____

Reginald P. Burgess